**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PECO PALLET, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:15-cv-06811 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NORTHWEST PALLET SUPPLY CO., | ) | |
| | ) | |
| Defendant. | ) | |

---

| | | |
|---|---|---|
| NORTHWEST PALLET SUPPLY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:15-cv-50182 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| PECO PALLET, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

PECO Pallet, Inc. ("PECO") manufactures and supplies rented wood pallets. Northwest

Pallet Supply Co. ("Northwest") is a pallet recycling company that, since approximately October

2013, has been collecting PECO pallets leased to customers and returning them to PECO. In the

past, PECO paid Northwest for those services pursuant to an asset recovery program ("ARP")

designed to enable PECO to recover its pallets more quickly. Recently, however, PECO advised

Northwest that it would no longer pay Northwest under the terms of the ARP, instead offering a

much lower rate of compensation going forward. PECO claims that, upon notification of the

change, Northwest refused to return the PECO pallets then in its possession in exchange for the

new rate, instead demanding payment pursuant to the terms of the ARP. As a result, PECO

brought this lawsuit, claiming that Northwest has refused or failed to return certain of its pallets

and that many of the pallets Northwest has returned have been physically damaged. PECO's five-count amended complaint asserts common law causes of action for replevin, conversion, detinue, trespass to chattels, and negligence.

The same day that PECO filed suit, Northwest brought its own action against PECO, claiming that, since receiving notice of the change in payment terms, it has nonetheless continued to collect and return (or attempt to return) PECO's pallets, but PECO has refused to pay reasonable compensation for those services.[1] In addition, according to Northwest, on several occasions PECO has refused to retrieve its pallets from Northwest's facilities altogether. With its complaint, Northwest seeks a declaratory judgment that PECO has abandoned the PECO pallets collected by Northwest and thus has no ownership interest in them. Alternatively, Northwest seeks a declaration that it is entitled to reasonable compensation for the services it provides. Northwest's amended complaint also includes Illinois common law claims for unjust enrichment, promissory estoppel, tortious interference with contract, and tortious interference with business expectancy. Now before the Court are (1) Northwest's motion to dismiss PECO's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 12(f); and (2) PECO's motion to dismiss Northwest's amended complaint pursuant to Rule 12(b)(6).[2] For the reasons stated below, both motions are granted in part and denied in part.

---

[1] Northwest's suit, originally filed in the Western Division of the United States District Court for the Northern District of Illinois, was transferred to the Eastern Division on December 1, 2015 and reassigned to this Court on December 28, 2015.

[2] Although the two cases have not been formally consolidated, because of their substantial overlap and in the interest of efficiency, the Court is deciding the present motions together in a single opinion.

**BACKGROUND**

I.      **PECO's Allegations**

As set forth in PECO's amended complaint, commercial goods in the United States have traditionally been transported on what are known as white wood pallets.[3] (PECO Am. Compl. ¶ 7, Dkt. No. 39.) Product manufacturers purchase white wood pallets at costs ranging from $5 to $12 per pallet. (*Id.*) In recent years, however, a market has grown for rented wood pallets, which are leased rather than purchased and are made of a higher-quality wood than white wood pallets. (*Id.* ¶¶ 7-8.) While ownership of white wood pallets shifts as they are distributed, rented wood pallets remain the property of their owner (in this case, PECO) and are tracked by their owner throughout the distribution process. (*Id.* ¶ 9.) Manufacturers rent pallets from PECO for a fee; when retailers receive shipments from manufacturers, they unload the goods and return the pallets to PECO. (*Id.* ¶ 10.) Retailers are not charged for using PECO's pallets, but they must return the pallets or otherwise make them available to PECO. (*Id.* ¶ 11.) Some retailers return PECO's pallets for free, while others charge PECO a courtesy fee. (*Id.* ¶ 12.) Upon return, PECO repairs any damage to its pallets and then re-leases them. (*Id.* ¶ 10.)

According to PECO, pallet recyclers collect all types of pallets—white wood and rented wood—from retailers' loading docks and then sort the pallets by type. (*Id.* ¶ 21.) Recyclers re-sell or otherwise recycle the white wood pallets and return the rented wood pallets to their owner. (*Id.* ¶¶ 21, 24-25.) PECO takes the position that when a retailer receives a shipment of goods on a rented wood pallet, the retailer becomes a bailee of the pallet. (*Id.* ¶ 26.) PECO further argues that pallet recyclers like Northwest voluntarily receive rented wood pallets for a purpose other than

---

[3] For purposes of deciding motions to dismiss, the Court accepts as true all well-pleaded factual allegations set forth in the plaintiff's complaint and views them in the light most favorable to the plaintiff. *See, e.g., Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)).

obtaining ownership, thereby forming a constructive bailment. (*Id.* ¶¶ 28, 30.) According to PECO, as a constructive bailee of its pallets, Northwest must preserve the pallets until they are returned to PECO "not for the sake of any benefit to [Northwest] or upon any expectation of compensation for [its] services, but solely to accommodate [PECO]." (*Id.* ¶ 28.)

In its amended complaint, PECO claims that from May to August of 2015, Northwest collected and wrongfully detained approximately 175,000 PECO pallets, nearly 17,000 of which were held at Northwest's headquarters in Belvidere, Illinois (*Id.* ¶ 31.) PECO demanded that Northwest return its pallets for $0.20 per pallet, which PECO asserts is a fair courtesy fee for the cost of sorting, loading, and returning the pallets. (*Id.* ¶ 35.) Northwest, however, demanded that PECO pay fees ranging from $1.25 to $2.15 per pallet (plus a storage fee) and threatened to dispose of the pallets if PECO refused to pay. (*Id.* ¶¶ 32, 34.)[4] On August 4, 2015, PECO brought this lawsuit to recover its pallets. (*Id.* ¶ 36.) The next day, PECO moved for entry of an order of replevin as to the approximately 17,000 pallets being held at Northwest's Belvidere facility. (*Id.*) In response, Northwest returned those pallets, and PECO thereafter withdrew its motion. (*Id.* ¶ 46.)

After returning the 17,000 Belvidere pallets, Northwest claimed to have returned all of the remaining 158,000 PECO pallets that it allegedly "held hostage" beginning in May 2015. (*Id.* ¶¶ 36, 48.) However, in October 2015, PECO was informed that approximately 7,800 of its pallets were being held at a Target Corporation ("Target") facility that is "handled" by Northwest. (*Id.* ¶ 52.) And at the end of October, PECO's web-based tracking system showed that Northwest still had not returned 31,009 PECO pallets from its Target facilities alone. (*Id.* ¶ 55.) PECO claims that Northwest has disposed of, sold, or destroyed a number of the 31,009 missing pallets. (*Id.*

---

[4] PECO asserts that, after it filed its lawsuit, Northwest began sending invoices to PECO for $4.75, and later $15, per pallet. (PECO Am. Compl. ¶¶ 43-44, Dkt. No. 39.)

¶ 57.) In addition, PECO claims that many of the pallets it has recovered from Northwest were physically damaged while in Northwest's possession. (*Id.* ¶ 58.) PECO seeks: (1) a declaration that PECO owns its pallets regardless of where they are in its distribution network; (2) a declaration that PECO is not required to pay anything to Northwest for the return of its pallets; (3) a permanent injunction prohibiting Northwest from purchasing, detaining, selling, or disposing of PECO's pallets in the future; (4) damages in the amount of the net rental value of PECO's pallets while wrongfully detained by Northwest and expenses incurred in recovering those pallets; (5) an order directing Northwest to turn over the 31,009 missing pallets or to pay their replacement value; (6) compensatory damages for the physical damage to PECO's pallets caused by Northwest; and (7) punitive damages for Northwest's allegedly willful and wanton conduct.

## II.     Northwest's Allegations

The allegations in Northwest's amended complaint are unsurprisingly at odds with the facts alleged by PECO. While the parties appear to agree on the basic white wood (sale model) versus rented wood (lease model) structure of the pallet industry, Northwest disagrees with how PECO presents its business model. In particular, Northwest asserts that PECO does not require its lessee-customers to return its pallets but, instead, represents that it will take on the obligation of recovering them. (Northwest Am. Compl. ¶ 8, Dkt. No. 8.) In an effort to recover its pallets— which end up at retailers' distribution centers and ultimately with pallet recyclers—more quickly, PECO offered the ARP to pallet recyclers across the country, including Northwest. (*Id.* ¶ 9.) Under the ARP, which was rolled out in October 2013, PECO offered to pay pallet recyclers $2.25 per pallet returned to PECO or $1.25 per pallet picked up by PECO. (*Id.*) Specifically, PECO represented to participating pallet recyclers as follows:

> If you receive a large number of PECO pallets and want to return them to our
> service center in your area, PECO will compensate you at the rate of $2.25 per

pallet plus a Fuel Service Charge . . . If you only receive a small quantity of PECO pallets, our dedicated fleet is available to pick up the pallets from your facility. PECO will compensate you at the rate of $1.25 per pallet, loaded onto PECO's truck.

(Northwest Am. Compl. Ex. 1, Dkt. No. 8-1.) Northwest has historically partnered with large national retailers (*e.g.*, Target) to recycle white wood pallets. (Northwest Am. Compl. ¶ 12, Dkt. No. 8.) However, relying on PECO's ARP, Northwest entered into agreements with several retailers to purchase at a fixed cost all pallets—white wood and rented wood—that accumulate at the retailers' facilities. (*Id.* ¶¶ 12-13.) Northwest then began collecting, sorting, and returning PECO's pallets, which are included in the pallets Northwest purchases in bulk from its retail partners, for the compensation offered in the ARP. (*Id.* ¶¶ 14-15, 39.) Until recently, PECO paid Northwest accordingly. (*Id.* ¶ 15.)

Then, in a letter dated May 12, 2015, PECO informed Northwest that it would no longer pay for Northwest's services at the rate offered under the ARP. (*Id.* ¶ 16.) Instead, PECO offered to pay $0.20 for each pallet Northwest returned going forward. (*Id.*) Northwest objected to what it characterizes as an attempt by PECO to unilaterally change the payment terms of the ARP. (*Id.* ¶ 17.) But PECO insisted that Northwest return its pallets under the revised compensation arrangement or face costly and time-consuming litigation. (*Id.*) Despite their disagreement, Northwest has continued to collect, sort, and return (or attempt to return) PECO's pallets. (*Id.* ¶ 18.) PECO, however, in addition to refusing to pay Northwest for those services, has on several occasions refused to retrieve its pallets from Northwest's facilities. (*Id.*) Northwest alleges that this is an attempt by PECO to force Northwest to accept compensation that is significantly less than the cost and expense incurred in collecting and returning the pallets. (*Id.* ¶ 21.)

Northwest further alleges that PECO has (1) accused Northwest's pallet recycling partners of wrongfully withholding PECO's pallets on behalf of Northwest; (2) harassed Northwest's

pallet recycling partners and retailer customers by threatening to drag them into litigation if they continue doing business with Northwest; and (3) falsely informed several of Northwest's pallet recycling partners and retailer customers that Northwest is engaged in illegal activity. (*Id.* ¶¶ 21-23.) According to Northwest, PECO has made these threats and accusations through dozens of phone calls and emails as well as in-person visits. (*Id.* ¶ 23.) Northwest surmises that PECO's true intent is to usurp Northwest's customer relationships and drive Northwest and other recyclers out of business. (*Id.* ¶ 25.) In its amended complaint, Northwest seeks (1) a declaration that PECO has abandoned its pallets in the marketplace and therefore has no ownership interest in them or, alternatively, that PECO has unlawfully refused to pay Northwest just and reasonable compensation for its services; and (2) an award of money damages.

## DISCUSSION

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). In its exercise of diversity jurisdiction, this Court applies the substantive law of Illinois to determine the elements the parties must plead to establish their claims. *See Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2002 WL 774185, at *2 (N.D. Ill. Apr. 26, 2002) (citing *Charter Oak Fire Ins. Co. v. Hedeen*, 280 F.3d 730, 735 (7th Cir. 2002)). To determine the sufficiency of the parties' complaints, however, the Court looks to federal pleading standards. *See id.*

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint

need not include detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Id*. at 555. The plaintiff must "'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted).

In addition to its Rule 12(b)(6) challenge, Northwest has moved to dismiss PECO's complaint pursuant to Rules 12(b)(1), 12(b)(7), and 12(f). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be granted on mootness grounds. *See St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007). In other words, "[w]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, the case is (or the claims are) moot and must be dismissed for lack of jurisdiction." *Id.* at 626 (internal quotation marks omitted). Rule 12(b)(7), meanwhile, allows a defendant to seek dismissal of a claim for failure to join a party under Federal Rule of Civil Procedure 19. *See* Fed. R. Civ. P. 12(b)(7.) Finally, under Rule 12(f), a court may strike any redundant or immaterial matter from the pleadings. *See* Fed. R. Civ. P. 12(f).

## I. PECO's Claims Against Northwest

### A. Replevin

Under Illinois law, whenever any goods or chattels are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels by the owner or person entitled to their possession. 735 ILCS 5/19-101. The replevin statute provides a specific procedure for resolution of such claims. Once a replevin action has been initiated, the court holds a hearing on

the entry of an order for replevin. 735 ILCS 5/19-107. If at that hearing the plaintiff establishes a *prima facie* case to a superior right to possession of the disputed property and also demonstrates the probability that he or she will ultimately prevail on the underlying claim to possession, the court enters an order for replevin. *Id.* Such an order requires that the disputed property be taken from the possession of the defendant and delivered to the plaintiff. 735 ILCS 5/19-109. If judgment is ultimately entered in favor of the plaintiff, he or she "shall recover damages for the detention of the property while the same was wrongfully detained by the defendant." 735 ILCS 5/19-125. If, however, "the right of property is adjudged against the plaintiff, judgment shall be entered for a return of the property [to the defendant] . . . and damages for the use thereof from the time it was taken until a return thereof is made[.]" 735 ILCS 5/19-123.

PECO's replevin claim relates specifically to the nearly 17,000 pallets allegedly detained by Northwest at its Belvidere facility from May to September of 2015. PECO asserts that it is entitled to a judgment establishing that those pallets were wrongfully detained, as well as damages in the amount of the pallets' reasonable net rental value during the period of detention. Northwest, on the other hand, argues that because the Belvidere pallets were returned to PECO, the issue of recovery is moot, which deprives the Court of subject-matter jurisdiction to issue an order for replevin. Northwest further asserts that under the Illinois replevin statute, a judgment of replevin—allowing PECO to recover damages—cannot be entered without an order for replevin.

It is undisputed that Northwest returned the 17,000 Belvidere pallets to PECO. It is for that reason that PECO withdrew its motion for entry of an order for replevin to recover those pallets. Therefore, the remaining issue is whether a replevin claim for damages is proper when there has been no order for replevin because the disputed property was voluntarily returned to the plaintiff. The Illinois replevin statute simply states that, "[i]f judgment is entered in favor of the plaintiff in

replevin, the plaintiff shall recover damages for the detention of the property while the same was wrongfully detained by the defendant." 735 ILCS 5/19-125. The statute does not speak directly to the question of whether such a judgment may be entered where the court has not entered an order for replevin, and the cases cited by the parties are not directly on point. However, at least one court has dismissed as moot a replevin claim (along with a detinue claim) when it was undisputed that the plaintiff's property had been returned by the defendants. *See Balboa Capital Corp. v. Graphic Pallet & Transp., Inc.*, No. 13 C 6503, 2015 WL 514987, at *4 (N.D. Ill. Feb. 6, 2015) (granting in part and striking as moot in part plaintiff's motion for summary judgment).

The purpose of a replevin claim is to recover one's property. The Court thus finds that because PECO has already recovered the 17,000 pallets at issue, its replevin claim is moot. Moreover, courts have advised that "[a]n action for replevin is 'a strict statutory proceeding, and the statute must be followed precisely.'" *WG Techs., Inc. v. Thompson*, No. 1:13-cv-304, 2013 WL 1943310, at *2 (N.D. Ill. May 8, 2013) (quoting *Carroll v. Curry*, 912 N.E.2d 272, 275 (Ill. App. Ct. 2009)). Because PECO withdrew its motion for entry of an order for replevin, it cannot be said that the statute has been followed precisely in this case. Finally, as discussed further below, PECO can seek damages for Northwest's alleged detention of the 17,000 Belvidere pallets through its trespass to chattels and negligence claims. PECO's replevin claim is therefore dismissed.

## B. Conversion

To establish a conversion claim under Illinois law, a plaintiff must show: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty.*

*State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)). PECO claims that it is the lawful owner of the pallets it manufactures and supplies through the lease model discussed above. PECO further claims that Northwest has failed to return at least 31,009 of its pallets. According to PECO, it has an absolute and unconditional right to the immediate possession of those pallets, it has demanded that Northwest return them, and, by failing to return the pallets, Northwest has wrongfully and without authorization assumed control, dominion, or ownership of them. Those allegations, taken together with the general allegations in PECO's complaint, are sufficient to state a claim for conversion. Northwest argues that PECO's conversion claim should nevertheless be dismissed for three reasons.

First, Northwest asserts that because it lawfully obtained possession of the pallets, PECO cannot establish that it wrongfully and without authorization assumed control, dominion, or ownership of them. According to Northwest, PECO admits that Northwest lawfully obtained possession of the pallets, in part, by including allegations of a constructive bailment in its complaint. PECO responds that Northwest did in fact acquire all 175,000 of the pallets at issue wrongfully, by purporting to assume ownership of the pallets rather than merely collecting them as a bailor. In PECO's view that, by itself, is conversion. But those arguments miss the point. Because conversion centers on wrongful *deprivation*, not wrongful *acquisition*, the manner in which Northwest obtained possession of the pallets in the first instance is not dispositive. *See DW Data, Inc. v. C. Coakley Relocation Sys., Inc.*, 951 F. Supp. 2d 1037, 1048 (N.D. Ill. 2013) (citing *Jensen v. Chi. & W. Ind. R.R. Co.*, 419 N.E.2d 578, 592-93 (Ill. App. Ct. 1981)); *see also Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1014 (N.D. Ill. 2000) (denying defendants' motion for summary judgment as to plaintiffs' bailment and conversion claims where defendants took possession of certain negatives and hard-copy photographs with the understanding that they would return them

to plaintiffs but later refused to do so). In other words, if Northwest *at any point* wrongfully deprived PECO of its pallets, Northwest may be liable for conversion. PECO alleges that Northwest wrongfully assumed control of at least 31,009 of its pallets by failing to return them. That is enough to state a claim for conversion.

Second, Northwest contends that it is entitled to a lien against the PECO pallets in its possession under the Illinois Labor and Storage Lien Act ("Lien Act"), 770 ILCS 45 *et seq.*, and therefore has no obligation to return them without compensation.[5] But the assertion of possessory lien rights under the Lien Act is an affirmative defense. *See Country Mut. Ins. Co. v. Styck's Body Shop, Inc.*, 918 N.E.2d 1195, 1199 (Ill. App. Ct. 2009). As such, it cannot defeat PECO's conversion claim at the motion to dismiss stage. *See, e.g., U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) ("Complaints need not anticipate or attempt to defuse potential defenses."); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under Rule 12(b)(6)[.]"). While "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense," *U.S. Gypsum*, 350 F.3d at 626, PECO has not done so here. It is therefore unnecessary at this point to address the parties' substantive arguments as to whether Northwest is in fact entitled to a lien on the pallets at issue.

Finally, Northwest argues that PECO's conversion claim is barred by the *Moorman* doctrine (generally known as the economic loss rule), which "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo*

---

[5] The Lien Act provides as follows:

> Every person, firm or corporation who has expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner . . . shall have a lien upon such chattel . . . for the contract price for all such expenditure of labor, skill or materials, or for all such storage, or in the absence of such contract price, for the reasonable worth of such expenditure . . . or . . . storage[.]"

770 ILCS 45/1.

*Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (Ill. 1982)). Northwest contends that because PECO alleges that Northwest has a duty to preserve its pallets as a constructive bailee, the *Moorman* doctrine applies. In other words, Northwest takes the position that a constructive bailment is a contractual relationship subject to Illinois's economic loss rule. PECO, on the other hand, argues that the *Moorman* doctrine does not apply in the absence of an express contract.

"Under Illinois law, bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled [the goods] shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept till he reclaims them." *In re Miss. Valley Livestock, Inc.*, 745 F.3d 299, 302–03 (7th Cir. 2014) (internal quotation marks omitted). Bailment-related claims may sound in either contract or tort. *See Byrton Dairy Prods., Inc. v. Harborside Refrigerated Servs., Inc.*, 991 F. Supp. 977, 985 (N.D. Ill. 1997); *DW Data*, 951 F. Supp. 2d at 1048; *D'Napoli Food Prods., Ltd. v. Wis. Farm Lines, Ltd.*, No. 85 C 668, 1985 WL 1376, at *1 (N.D. Ill. May 16, 1985) ("A bailment is a consensual relationship which gives rise to certain duties and obligation[s] in contract and tort. It is hornbook law that a bailor may maintain any action against a bailee in contract (if the bailee has failed to perform an obligation) or in tort (if the bailee has breached a recognizable duty).") (internal citation omitted); *see also Natkin*, 111 F. Supp. 2d at 1014 (addressing claims for conversion and breach of bailment contract).

Illinois law thus treats bailments as a type of contract, but not the type subject to the *Moorman* doctrine. Courts generally entertain conversion claims, along with other tort claims, when there is a bailment relationship at issue. *See, e.g., Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 800-04 (N.D. Ill. 2016) (holding that plaintiffs had sufficiently alleged claims for

negligence, bailment, conversion, and trespass to chattels); *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 770 F.2d 98, 102 (7th Cir. 1985) ("Usually it makes no difference to the outcome whether the bailee is guilty of conversion or negligence[.]"); *Lee v. City of Chi.*, 330 F.3d 456, 467 (7th Cir. 2003) ("And far from alleging the inadequacy of state-law remedies, [plaintiff] has asserted pendant state-law claims for bailment, trespass, and wrongful conversion."); *see also* Restatement (Second) of Torts § 237 (1965) ("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion."). *Cf. Toll Processing Servs., LLC v. Kastalon, Inc.*, No. 12-cv-10058, 2015 WL 5179685, at *3-5 (N.D. Ill. Sept. 4, 2015). Moreover, at least one court has squarely held that the *Moorman* doctrine is inapplicable where the plaintiff's claims are based, at least in part, on the duty of care arising under an implied bailment contract, as opposed to the terms of a specific contract between the parties. *See Trade Sols. Inc. v. Eurovictory Sports, Inc.*, No. 97 CV 1153, 1998 WL 111639, at *5 (N.D. Ill. Mar. 9, 1998). This authority indicates that Illinois law does not necessarily treat claims based on the relationship between a bailee and bailor as contract claims subject to the economic loss rule. Where, as is the case here, the plaintiff's claim sounds in tort rather than contract, the *Moorman* doctrine does not apply.

As none of Northwest's arguments works to defeat PECO's conversion claim, which is otherwise adequately alleged, the claim survives.

### C. Detinue

"Detinue is a possessory action for the recovery of specific personal property and damages for its detention." *FirstMerit Bank, N.A. v. Micro Medics Comput.*, No. 14 CV 2396, 2014 WL 4494731, at *2 (N.D. Ill. Sept. 9, 2014). "The essence of an action in detinue is that the defendant

is wrongfully in possession of personal property belonging to plaintiff." *Relational Funding Corp. v. Siemens Info. & Commc'ns Networks, Inc.*, No. 00 C 0180, 2000 WL 1222126, at *2 (N.D. Ill. Aug. 23, 2000) (citing *Gary Acceptance Corp. v. Napilillo*, 230 N.E.2d 73, 76 (Ill. App. Ct. 1967)). Detinue differs from replevin in that there is no preliminary determination as to whether the property at issue should be returned to the plaintiff pending final judgment. *See id.* at *3 ("Both detinue and replevin give to the plaintiff his property in specie, or alternatively; if it can not [*sic*] be found, its value. But [] by replevin it is taken from the defendant before the right is finally determined . . . while in detinue, his possession remain[s] undisturbed until after final judgement against him[.]") (internal quotation marks omitted).

In count three of its amended complaint, PECO alleges that Northwest has wrongfully possessed 175,000 pallets belonging to PECO. PECO further asserts that it has demanded the return of those pallets, but at least 31,009 have not yet been returned. PECO seeks to recover the 31,009 remaining pallets or, in the alternative, to recover damages in the amount of their replacement value. As to the pallets that Northwest has returned, PECO claims it is entitled to damages for the period during which they were wrongfully detained (in the amount of their reasonable net rental value during that period).

Because detinue, like replevin, centers on the recovery of personal property, it is not a proper cause of action by which to obtain relief for the pallets that have already been returned to PECO. Indeed, PECO cannot establish the fundamental element of a detinue claim with respect to the returned pallets: that Northwest is wrongfully in possession of them. *See Barber v. Ruth*, No. 90 C 06794, 1991 WL 32707, at *1 (N.D. Ill. Mar. 7, 1991) ("The gist of [a detinue] claim is that defendant is wrongfully in possession of personal property belonging to plaintiff.") (internal quotation marks and emphasis omitted). That does not mean that PECO has no recourse for

damages with respect to the period during which the returned pallets were held by Northwest; rather, PECO may seek to recover such damages through its trespass to chattels and negligence claims.

However, with respect to the 31,009 pallets Northwest has allegedly failed to return, to the extent those pallets are in Northwest's possession, PECO has stated a claim for detinue.[6] *See Relational Funding*, 2000 WL 1222126, at *3 (holding that plaintiff had stated a claim for detinue by alleging both essential elements of the claim: that defendants were in wrongful possession of plaintiff's property and that plaintiff was entitled to possession of the property). Northwest contends that, like PECO's conversion claim, this claim should be dismissed because PECO cannot establish that Northwest is in wrongful possession of its pallets. The Court has already rejected that argument. Northwest also asserts that the claim should be stricken as redundant pursuant to Rule 12(f). But because a detinue claim allows for the recovery of property—as opposed to damages—in a way PECO's other surviving claims do not, the Court declines to strike it.

### D.    Trespass to Chattels

Trespass to chattels under Illinois law involves an injury to or interference with possession of personal property, with or without physical force. *Zissu*, 157 F. Supp. 3d at 803; *see also Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005). Such a trespass may be committed by intentionally (1) dispossessing another of a chattel; or (2) using or intermeddling with a chattel in the possession of another. *Sotelo*, 384 F. Supp. 2d at 1229 (citing Restatement

---

[6] PECO's complaint suggests that the 31,009 missing pallets are currently held at certain Target facilities. The complaint also includes an allegation that certain of those pallets have been disposed of, sold, or destroyed. Northwest does not argue that PECO's detinue claim should be dismissed for failure to properly allege that Northwest is in possession of the missing pallets. The Court will therefore not address that argument.

(Second) of Torts § 217 (1965) and noting that "[t]here is sparse Illinois case law from the last century addressing the elements of trespass to personal property, which ha[s] become a little-used cause[] of action"). According to the Restatement of Torts, a dispossession may be committed by intentionally (1) taking a chattel from the possession of another without the other's consent; (2) obtaining possession of a chattel from another by fraud or duress; (3) barring the possessor's access to a chattel; (4) destroying a chattel while it is in another's possession; or (5) taking a chattel into the custody of the law. Restatement (Second) of Torts § 221 (1965). "Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability [for the tort of trespass to chattels]." *Sotelo*, 384 F. Supp. 2d at 1229 (citing Restatement (Second) of Torts §218(b) (1965)).

PECO claims that Northwest committed a trespass to chattels by wrongfully detaining 175,000 of its pallets and causing physical damage to certain of those pallets. Northwest argues that because PECO was not in possession of the pallets at issue, it cannot state a claim. According to Northwest, it could not have dispossessed PECO of its pallets because PECO did not have possession of them; for the same reason, Northwest could not have used or intermeddled with the pallets while in the possession of PECO. The Court agrees that the "using or intermeddling" prong of a trespass to chattels claim does not apply here. PECO's lack of possession of the pallets, however, does not defeat its claim of a dispossession. In fact, the comments to the relevant section of the Restatement make clear that PECO has adequately alleged a dispossession.

The Restatement notes that dispossession "may consist of an assumption of complete control and dominion over the chattel without an actual taking or carrying away." Restatement (Second) of Torts § 221 cmt. c (1965). In other words, "[i]f the assumption of control effectively deprives the other of all the essential advantages of possession, the dispossession is complete[.]"

*Id.* Furthermore, contrary to Northwest's position, barring access does not necessarily involve force; nor does it require PECO to have been in possession of the pallets. *See id.* cmt. e ("[O]ne who is under a duty to admit to his land a possessor of a chattel who is seeking to obtain it has effectively dispossessed the other of his chattel if he refuses him access to it.").

Applying these principles and the sparse case law on the subject, the Court concludes that PECO has adequately alleged a dispossession, and thus a trespass to chattels claim. Northwest's alleged detention of approximately 175,000 PECO pallets from May to August of 2015 in the face of repeated demands by PECO for their return effectively deprived PECO of the essential advantages of possession. That constitutes a dispossession. *See Najieb v. Chrysler-Plymouth*, No. 01 C 8295, 2002 WL 31906466, at *10-11 (N.D. Ill. Dec. 31, 2002) (dealership dispossessed plaintiff of her $1,000 down payment by failing to return it to her when it was unable to obtain financing on her behalf); *see also Ogbolumani v. Young*, No. 1-14-1930, 2015 WL 1284064, at *8 (Ill. App. Ct. Mar. 20, 2015) (unpublished opinion) (any unlawful exercise of authority over the goods of another will support a trespass). PECO's allegation that certain of its pallets were returned in a damaged condition also supports its trespass to chattels claim.

### E.  Negligence

In asserting its claim for negligence, PECO maintains, first, that as a constructive bailee, Northwest had a duty to exercise reasonable care in the handling, storage, and return of its pallets; and second, that Northwest breached that duty, which resulted in the delayed return of its pallets, the loss of certain pallets, and damage to a number of the pallets that Northwest returned.

Under Illinois law, there is a presumption of bailee negligence when the plaintiff shows: (1) an express or implied agreement to create a bailment; (2) delivery of the property to the bailee in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return

the property or the bailee's redelivery of the property in a damaged condition. *See Indem. Ins. Co. of N. Am. v. Hanjin Shipping Co.*, 348 F.3d 628, 637-38 (7th Cir. 2003); *Alexander Chem. Corp. v. G.S. Robins & Co.*, 852 F. Supp. 2d 1048, 1052 (N.D. Ill. 2012). PECO's amended complaint specifically alleges the existence of an implied bailment. The complaint also includes allegations related to Northwest's acceptance of the pallets at issue, its failure to return certain pallets, and its return of certain pallets in a damaged condition. PECO does not explicitly allege delivery of the pallets in good condition. But plaintiffs are not required to plead the elements of a cause of action and this element can be reasonably inferred from the other facts alleged in the complaint. Northwest's only argument for dismissal of PECO's negligence claim is that it is barred by the *Moorman* doctrine. For the reasons discussed above, that doctrine does not apply here. PECO's negligence claim therefore survives.

### F.      Failure to Join Parties

In addition to the arguments already discussed, Northwest contends that PECO's amended complaint should be dismissed because PECO has failed to join necessary and indispensable parties. As noted above, Rule 12(b)(7) allows a defendant to seek dismissal of a claim for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). "Joinder under Rule 19 is a two-step inquiry[.]" *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001). The Court must first determine whether a party is one that should be joined if feasible (a so-called necessary or required party). *Id.* (quoting *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). Rule 19(a) addresses persons required to be joined if feasible:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If the Court concludes that a party should be joined under Rule 19(a) but cannot be, it must then decide whether the litigation can proceed in the party's absence. *Davis*, 268 F.3d at 481 (quoting *Thomas*, 189 F.3d at 667). Specifically, under Rule 19(b), "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) goes on to list the factors to be considered in making that determination. The Seventh Circuit has advised that "[i]f there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under [Rule] 12(b)(7)." *Davis*, 268 F.3d at 481 (quoting *Thomas*, 189 F.3d at 667).

Northwest asserts that PECO's manufacturer and retailer customers are necessary and indispensable parties to PECO's lawsuit. Specifically, according to Northwest, the relevant manufacturers and retailers are necessary to determine responsibility, if any, for the physical damage allegedly caused to PECO's pallets. Northwest contends that without those parties, the Court cannot determine where in the distribution or recycling process the alleged damage occurred. In addition, Northwest asserts that, to determine its rights and obligations as a constructive bailee, the Court must also determine the rights and obligations of the manufacturers and retailers as the original bailees. That is because as an alleged constructive bailee it is entitled to the same protections and defenses as the original bailees. Finally, Northwest contends that because the 31,009 missing pallets may be in the possession of the manufacturers or retailers, they must be joined as parties.

None of those arguments is convincing. Joinder of the manufacturers and retailers is not necessary to determine whether Northwest committed conversion or trespass to chattels, is in wrongful possession of PECO's pallets, or caused physical damage to the pallets. Contrary to Northwest's position, PECO's claims do not require the Court to evaluate whether the manufacturers or retailers caused damage to the pallets. The Court need only determine whether Northwest damaged the pallets, and the absent parties are not necessary to that determination. Nor is there any need for the Court to make any findings as to the rights and obligations of the manufacturers and retailers to decide whether a constructive bailment existed between PECO and Northwest and, if it did, what that means for PECO's claims. Finally, with respect to the missing pallets, the Court need only determine whether they are in Northwest's possession and, if not, what Northwest did with them (if anything). Again, that determination does not require the inclusion of, or any determination regarding, the manufacturers and retailers. There is thus no risk of prejudice to the absent parties; the ultimate findings in this litigation will not impair their ability to protect their interests.

Because the manufacturers and retailers are not necessary parties, the Court need not consider whether they are indispensable under Rule 19(b). Accordingly, the Court declines to dismiss any of PECO's claims pursuant to Rule 12(b)(7).

## II.     Northwest's Claims Against PECO

### A.     Declaratory Judgment

In its amended complaint, Northwest asks the Court to issue a declaratory judgment that PECO has no ownership interest in the pallets it allegedly abandoned and that recyclers like Northwest are bona fide purchasers with full and clear title to the pallets. Alternatively, Northwest seeks the following declarations: (1) that Northwest is entitled to just and reasonable

compensation for its services of collecting, sorting, and returning PECO's pallets; (2) that Northwest is entitled to just and reasonable compensation for all pallets returned to PECO for which PECO has refused to pay Northwest; and (3) that Northwest has an enforceable lien on all PECO pallets recycled by Northwest or stored at its facilities.

PECO argues that the declaratory judgment claim should be dismissed because it serves no useful purpose in light of PECO's earlier-filed substantive suit against Northwest. The Court agrees. Because the issues raised in Northwest's declaratory judgment claim will be resolved by the parties' other claims, dismissal is appropriate. *See, e.g.*, *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) ("All of the issues in the declaratory judgment claim will be resolved by the substantive action, so the declaratory judgment serves no useful purpose."); *see also Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015) (noting that courts in this District commonly exercise their discretion to dismiss declaratory actions where the claim for declaratory judgment substantially overlaps with the plaintiff's substantive claims).

Northwest asserts that its request for declaratory relief will resolve the parties' legal rights and obligations on critically important issues relating to their respective businesses. But those rights and obligations can be just as readily resolved by the parties' other claims. For example, ownership of the pallets, as well as any possessory lien rights, will be determined by PECO's conversion claim. And Northwest's entitlement to reasonable compensation from PECO for its return services will be determined by its unjust enrichment and promissory estoppel claims. Northwest further asserts that a declaratory judgment will serve the purpose of defining the parties' ongoing business relationships, which will not be decided by PECO's claims related only to a limited number of pallets. But that argument is unconvincing, as determination of the parties' legal rights and obligations with respect to the limited number of pallets at issue will allow PECO

and Northwest to structure—or restructure, as the case may be—their business models accordingly. Besides, it is not the Court's role to determine the parties' going forward business relationships or role within the pallet industry.

### B. Unjust Enrichment

To prevail on a claim for unjust enrichment under Illinois law, a plaintiff must show that the "defendant has unjustly retained a benefit to the plaintiff's detriment and . . . the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (internal quotation marks omitted). "The essence of the cause of action is that one party [has been] enriched, and it would be unjust for that party to retain the enrichment." *Id.* (internal quotation marks omitted).

Here, Northwest alleges that PECO has been unjustly enriched by the collection, sorting, storing, and return services performed by Northwest. That allegation, taken together with Northwest's general allegations that PECO has wrongfully refused to pay for those services and that Northwest is therefore incurring substantial costs with no compensation, is sufficient to state a claim under an unjust enrichment theory. It is certainly plausible that PECO has unjustly retained the benefit of Northwest's services to its detriment, at least with respect to the PECO pallets that Northwest collected, sorted, stored, or returned prior to its receipt of the May 12, 2015 letter and for which services PECO has allegedly refused to compensate Northwest pursuant to the terms of the ARP. Furthermore, with respect to the pallets that PECO has allegedly refused to pick up from Northwest's facilities, it is a reasonable inference that, as a result of such refusal, PECO is benefiting from free storage to Northwest's detriment.

PECO asserts that it is legally impossible for Northwest to state a claim for unjust enrichment because Northwest alleges that it had a contract with PECO. It is true that a plaintiff cannot recover damages under an unjust enrichment theory when there is a contract between the parties that governs the subject in dispute. *See Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir. 2008); *see also Blythe*, 750 F.3d at 658 ("A claim for unjust enrichment is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application.") (internal quotation marks omitted); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant . . . [in part because] [i]f an express contract exists to govern the parties' conduct, then there is no room for an implied contract.") (internal citations omitted). *Cf. Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 571 (7th Cir. 2016) (holding that the doctrine of unjust enrichment did not apply where the parties' employment relationship was governed by an implied contract). But Northwest's complaint specifically states that there is no written agreement between the parties relating to its return services. And moreover, Northwest alleges that the ARP was an unambiguous promise upon which it relied to its detriment, not that it was a specific contract governing the parties' relationship.

PECO also contends that Northwest's unjust enrichment claim should be dismissed as implausible in light of Northwest's own argument that PECO abandoned the pallets, as such abandonment, by definition, could not enrich PECO. The Court does not see any merit in that argument either. While it may not be possible for PECO to be enriched by abandoning its pallets, that is not what Northwest alleges. Rather, Northwest alleges that PECO has been enriched by receiving its pallets back. Moreover, the issue of whether PECO abandoned its pallets is separate

from whether it has been unjustly enriched by Northwest's services. An ultimate finding that PECO abandoned the pallets and that Northwest rightfully possesses them would not necessarily defeat the claim that PECO has been unjustly enriched with respect to the thousands of pallets that Northwest has returned. In its reply brief, PECO attempts to clarify its position, stating that it is implausible to suggest that PECO has been unjustly enriched by receiving its own rental property back. That argument, however, assumes there are no costs involved in the collection, handling, and return of the pallets. To the extent Northwest has incurred those obvious costs—and PECO has received the benefit of Northwest's services for free—an unjust enrichment claim is certainly plausible.

### C.  Promissory Estoppel

To establish promissory estoppel under Illinois law, a "plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant[]; and (4) plaintiff relied on the promise to its detriment." *Wigod*, 673 F.3d at 566 (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009)). Northwest alleges that the ARP was an unambiguous promise by PECO upon which it reasonably relied in entering into agreements with retailers to purchase all of their pallets, including PECO pallets, and in performing collection, sorting, and return services to PECO's benefit.[7] Northwest further alleges that such reliance was expected and foreseeable by PECO. Those allegations are sufficient to state a claim for promissory estoppel.

Based on the allegations in Northwest's amended complaint, the Court may reasonably infer that the ARP was an unambiguous promise by PECO to compensate pallet recyclers such as

---

[7] While Northwest's amended complaint focuses largely on its contracts with retailers, read fairly, the complaint also alleges that Northwest provided services to PECO in reliance on the ARP.

Northwest for at least certain PECO pallets collected and returned.[8] And it is surely plausible that PECO expected pallet recyclers to rely on that promise and begin performing return services. Finally, to the extent Northwest provided services up until its receipt of PECO's May 12, 2015 letter, but has not been compensated for such services, Northwest's reliance on PECO's promise has been to its detriment. As noted in the Court's opinion denying Northwest's motion for a preliminary injunction (Dkt. No. 72), it may be difficult for Northwest ultimately to prove that PECO should have foreseen that it would enter into agreements with retailers without taking measures to protect itself against the risk of PECO revoking or changing the terms of the ARP. But Northwest has adequately alleged, and may be able to prove a set of facts to support, that claim. *See Enger*, 812 F.3d at 568 ("Dismissal is proper [only] if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested.") (internal quotation marks omitted).

PECO argues that Northwest's promissory estoppel claim is defeated by its allegation of a contract between the parties supported by consideration. It is true that, "[u]nder Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist but consideration is lacking." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005) (citing *Bank of Marion v. Robert "Chick" Fritz, Inc.*, 311 N.E.2d 138, 140 (Ill. 1974)). But as discussed above, Northwest has not alleged that the parties' relationship is governed by any specific or express contract. PECO contends that Northwest's complaint alleges "textbook consideration, which 'is defined as a bargained-for exchange[.]'" (PECO Mem. in Supp. of Mot. to Dismiss at 10, Dkt. No. 34) (quoting *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737,

---

[8] PECO argues that it did not offer compensation for all pallets returned; rather, the ARP offered compensation only for pallets with which recyclers inadvertently came into contact. (PECO Mem. in Supp. of Mot. to Dismiss at 10, Dkt. No. 34.)

742 (N.D. Ill. 2011)). In support of that contention, PECO points to Northwest's allegation that it returned pallets to PECO in exchange for the compensation offered under the ARP. But that is not, on its face, an allegation of a bargained-for exchange. Nowhere does Northwest allege that the parties agreed on the ARP's payment terms. To the contrary, Northwest alleges that the ARP was a promise made by PECO. Northwest's allegation that it returned pallets in exchange for the compensation offered by PECO is perfectly consistent with its theory of promissory estoppel— that is, a unilateral promise relied upon to its detriment. Moreover, Northwest claims that PECO refused to pay for the handling and return of certain pallets. At the very least, there is an obvious lack of consideration with respect to those pallets. Thus, Northwest's promissory estoppel claim survives as well.

### D. Tortious Interference with Contract

To establish a claim for tortious interference with contract under Illinois law, "a plaintiff must show: '(1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) occurrence of a breach resulting from defendant's conduct; [and] (5) damages[.]'" *Res. Fin. Corp. v. Interpublic Grp. of Cos., Inc.*, No. 08 C 3331, 2008 WL 4671773, at *2 (N.D. Ill. Oct. 21, 2008) (quoting *Guice v. Sentinel Techs., Inc.*, 689 N.E.2d 355, 359 (Ill. App. Ct. 1997)). Northwest alleges that PECO, by revoking the ARP and refusing to pick up its pallets, has intentionally attempted to induce a breach of the contracts between Northwest and its retail partners. According to Northwest, PECO's conduct has been intended to prevent Northwest from providing services to retailers, and Northwest has been damaged insofar as it has incurred increased costs in attempting to provide those services. Fatal to its claim, however, Northwest fails to identify any breach of contract resulting from PECO's

conduct, alleging only that PECO *attempted* to induce a breach. *See, e.g., Miller UK Ltd. v. Caterpillar Inc.*, No. 10-cv-03770, 2015 WL 6407223, at *6 (N.D. Ill. Oct. 21, 2015) ("[A]n element of a tortious interference with contract claim under Illinois law is an actual breach caused by the defendant's conduct, not the mere possibility of breach.")

Northwest argues that an actual breach is not essential, that conduct which coerces a contractual modification is sufficient. But even if that were so, Northwest has not alleged any facts to suggest that its contracts with retailers have actually been modified as a result of PECO's conduct. Rather, Northwest asserts only that it is now more costly to perform the services required under those contracts. But mere increased cost of performance is insufficient to state a claim for tortious interference with contract. *See, e.g., Triple Canopy, Inc. v. Moore*, No. 04 C 3265, 2005 WL 1629768, at *7 (N.D. Ill. July 1, 2005) (mere increased burden and expense of performance is insufficient to state a claim for tortious interference with contract; rather, Illinois law requires breach of contract, termination of contractual relations, or rendering performance impossible). Furthermore, increased cost of performance does not necessarily require contract modification or render performance impossible. In its response brief, Northwest states that, fairly read, its complaint alleges that PECO's actions have resulted in contract modification through increased prices as well as it being impossible for Northwest to perform its contracts as intended. Those allegations are not in the complaint, however. Moreover, Northwest does not allege that the pricing in its contracts has actually been modified, and impossibility of performance "as intended" is not the same as impossibility of performance.

Finally, as PECO points out, to state a claim for tortious interference with contract, the alleged interference must have been directed toward the third party, not the plaintiff. *See Nagle v. Chi. Sch. Reform Bd. of Trs.*, No. 96 C 4150, 1999 WL 160234, at *9 (N.D. Ill. Mar. 10, 1999)

(citing *Cont'l Mobile Tel. Co., Inc. v. Chi. SMSA Ltd. P'ship*, 587 N.E.2d 1169, 1174 (Ill. App. Ct. 1992)). Here, the only conduct directed toward third parties is PECO's alleged harassment of Northwest's business partners. Yet it is PECO's refusal to pay Northwest—not its alleged harassment of certain retailers and other pallet recyclers—that has allegedly increased prices and made it impossible for Northwest to perform its contracts as intended. For all of these reasons, Northwest's tortious interference with contract claim must be dismissed.

### E. Tortious Interference with Business Expectancy

The final claim asserted by Northwest is for tortious interference with business expectancy. "Under Illinois law, the elements of a claim for tortious interference with business expectancy are: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference." *Am. Audio Visual Co. v. Rouillard*, No. 07 C 4948, 2010 WL 914970, at *2 (N.D. Ill. Mar. 9, 2010). Northwest alleges that (1) it has a reasonable expectancy to enter into (or continue) business relationships with retailers and other pallet recyclers; (2) PECO knows and has known of that expectancy; (3) PECO tortiously interfered with Northwest's business relationships by harassing its retailers and partner recyclers, which has prevented Northwest from realizing its expectancy; and (4) as a result, Northwest has lost business and incurred higher costs in recycling and returning pallets.

A claim for tortious interference with business expectancy may be brought where the plaintiff has a reasonable expectation of continuing, as opposed to entering into, a business relationship. *See, e.g., Dorado v. Aargus Sec. Sys., Inc.*, No. 00 C 4002, 2002 WL 230776, at *5 (N.D. Ill. Feb. 14, 2002); *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 971 (N.D.

Ill. 2007). Thus, Northwest's claim is not defeated by the fact that its allegations of purposeful interference relate solely to its current business partners. However, in the same way that Northwest's failure to allege a breach of contract defeats its tortious interference with contract claim, this claim is defeated by Northwest's failure to allege that PECO's interference with its business relationships has actually prevented its realization of those relationships. And, again, the alleged interference must be directed toward a third party, not the plaintiff. *See Premier Transp., Ltd. v. Nextel Commc'ns, Inc.*, No. 02 C 4536, 2002 WL 31507167, at *2 (N.D. Ill. Nov. 12, 2002). The allegation that PECO's revocation of the ARP and refusal to pick up its pallets has prevented Northwest from realizing its business relationships is therefore insufficient to state a claim for tortious interference with business expectancy. Dismissing the claim on those grounds, the Court need not address the parties' arguments with respect to the competitor's privilege.

## CONCLUSION

For the reasons stated above, Northwest's motion to dismiss PECO's amended complaint is granted in part and denied in part, and PECO's motion to dismiss Northwest's amended complaint is also granted in part and denied in part. Northwest's motion is granted with respect to PECO's replevin claim and denied with respect to PECO's claims of conversion, detinue, trespass to chattels, and negligence. PECO's motion is granted as to Northwest's declaratory judgment, tortious interference with contract, and tortious interference with business expectancy claims, and denied as to Northwest's claims of unjust enrichment and promissory estoppel.

ENTERED:

Dated:  September 28, 2016

_____
Andrea R. Wood
United States District Judge