**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PECO PALLET, INC. | ) | Case No. 1:15-cv-06811 |
| Plaintiff, | ) | Honorable Judge Andrea R. Wood |
| v. | ) | Magistrate Judge Michael T. Mason |
| NORTHWEST PALLET SUPPLY CO. | ) | |
| Defendant. | ) | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTHWEST PALLET SUPPLY CO., | ) | Case No.: 3:15-cv-50182 |
| Plaintiff, | ) | |
| v. | ) | Honorable Judge Andrea R. Wood |
| | ) | Magistrate Judge Michael T. Mason |
| PECO PALLET, INC., | ) | |
| Defendant. | ) | |

**PECO PALLET, INC.'S MOTION TO COMPEL THE PRODUCTION OF
DOCUMENTS BY NORTHWEST AND FOR SANCTIONS AGAINST NORTHWEST**

PECO Pallet, Inc. ("PECO"), by and through its undersigned counsel, respectfully moves this Court for the entry of an order compelling Northwest Pallet Supply Company ("Northwest") to (i) produce documents responsive to PECO's Requests for Production and (ii) pay PECO's fees and costs in bringing this motion. Despite claims that it seeks to expedite this litigation, Northwest has repeatedly and unreasonably delayed the discovery process. Instead of working towards a resolution of this case on the merits, Northwest has spent its time making empty promises it does not keep, publicizing the confidential settlement offer PECO made at the parties' December

1

settlement conference, and instructing at least one third-party to refuse to produce records responsive to a validly issued subpoena. In further support of this motion, PECO states as follows:

**FACTUAL BACKGROUND**

1. On October 26, 2015, and January 29, 2016, PECO served upon Northwest its First and Second Requests for Production. (Ex. 1, PECO's First and Second Requests for Production.) These Requests sought, among other things, documents relating to:

- "Northwest's purchase, collection, handling, storage, sale, destruction, return and/or disposition of PECO pallets" (RFP No. 2);

- "Recyclers working in any capacity, whether formal or informal, with Northwest in the purchase, sale, collection, handling, storage, destruction, return and/or other disposition of PECO pallets" (RFP No. 4);

- "Northwest's formal or informal relationships with retailers receiving goods on PECO pallets" (RFP No. 5);

- "Northwest's relationship, whether formal or informal, with recyclers in any way handling PECO pallets" (RFP No. 12);

- "PECO's Asset Recovery Program from the first time you were informed of such program, whether orally or in writing, to the present" (RFP No. 18); and

- "All agreements and/or contracts, including any amendments thereto, between you and any customer that you entered into in reliance on PECO's Asset Recovery Program or the compensation allegedly referenced therein, from January 1, 2013 to the present" (RFP No. 22).

2. After nearly five months without a single document produced by Northwest, PECO filed seeking a motion to compel Northwest to begin producing documents in advance of the then operative discovery deadline. (Dkt. No. 77.) It was not until the night before the parties' hearing on that motion that Northwest finally made a production of documents.[1] (*See* Ex. 2, 4/5/16 Hearing Tr. at 6-7 ("THE COURT: So Mr. Wix, it does sound like you didn't produce anything until after

---

[1] Even still this production failed to comply with the terms of the ESI Stipulation. (*See* Ex. 2, 4/5/16 Hearing Tr. at 6-7, 9.)

they filed the motion.  Is that what happened? . . . MR. WIX: That's the timing of when they're actually produced. . .").)[2]  After the hearing on that motion, Northwest began producing documents pursuant to the ESI Stipulation.

3. However, PECO was once again forced to bring the parties' discovery disputes to the Court when Northwest refused to produce additional documents that it had stated it would produce and which were plainly relevant to the claims in this litigation, including Northwest's own claims against PECO.  On October 11, 2016, PECO filed a second motion to compel the production of three categories of documents, specifically (i) agreements between Northwest and its retailer partners; (ii) agreements and the accompanying "contract communications" between Northwest and its recycler partners; and (iii) documents showing Northwest's costs to handle PECO pallets. (Dkt. No. 104.)  After PECO filed that motion, Northwest did produce a document regarding the third category, but steadfastly refused to produce any documents regarding categories (i) and (ii).

4. The Court agreed with PECO and ordered Northwest to produce documents responsive to categories (i) and (ii).  (*See* Dkt. Nos. 116, 118.)  Northwest complied with the Court's order and produced the requested documents.  (Ex. 3, Weber Decl. ¶ 11.)

5. In 2016, PECO issued third-party subpoenas to various of Northwest's recycler partners.  Northwest moved to quash those subpoenas, but the Court denied its motion after a discussion in Court clarified the scope of those subpoenas.  (*See* Ex. 4, 5/10/16 Hearing Tr. at 15-30.)  In 2017, PECO issued additional subpoenas to other recycler partners of Northwest as well as SpartanNash Company, a retailer customer of Northwest.  Neither Northwest nor any of the recipients moved to quash or otherwise modify these subpoenas.  (Ex. 3, Weber Decl. ¶ 2.)

---

[2] For convenience, all docket entries refer only to *PECO Pallet, Inc. v. Northwest Pallet Supply Co.*, Case No. 15-cv-06811.

6. While many of these subpoena recipients have produced documents in response to PECO's subpoenas, at least three recipients have failed to produce *any* documents to date. Northwest has interfered with the judicial process with respect to at least one and perhaps untold more subpoena respondents. Specifically, Northwest instructed Tritz Pallet that it does "not need to produce any documents to PECO." (Ex. 3, Weber Decl. ¶ 10.)

7. The limited documents PECO has received from these third-parties thus far reveal numerous deficiencies in Northwest's own document production. Many of the documents produced by third-parties were emails between the third-party and Northwest which fall within the parties' agreed upon ESI protocol (i.e., to/from an agreed upon custodian within the agreed upon date range and containing one more search terms). As a result, these emails should been produced by Northwest *and* the third-party, however, Northwest never produced large batches of these emails, raising significant concerns about the integrity of Northwest's document collection and production. (Ex. 3, Weber Decl. ¶¶ 3-5; *see also* Ex. 5, 5/4/17 Weber Letter.) Further, many of the documents concern the handling of PECO pallets and/or the prices charged for handling PECO pallets—the very gravamen of the instant litigation. (Ex. 3, Weber Decl. ¶¶ 3-4.) Despite the fact that these emails were in the custody of Northwest, many of these documents were never produced by Northwest. (Ex. 3, Weber Decl. ¶¶ 3-5.)

8. For example, on February 13, 2017, PECO sent a third-party subpoena to one of Northwest's customers, SpartanNash Company, seeking, among other documents, those relating to the relationship between SpartanNash and Northwest, the services Northwest provides to SpartanNash, and communications between SpartanNash and Northwest regarding the handling of PECO pallets. (Ex. 6, SN Subpoena.) Ultimately, SpartanNash produced over 5,000 documents, including communications between SpartanNash personnel and Northwest personnel, specifically

Jim Riff, regarding PECO and/or the relationship between Northwest and SpartanNash. In fact, many of these emails provide further evidence of Northwest's illegal conduct alleged in PECO's counterclaim—evidence that Northwest never produced, despite its obligation to do so.[3] (*See* Case No. 15-cv-50182, Dkt. No. 100.)

9. On May 4, 2017, PECO's counsel sent Northwest's counsel a letter detailing this deficiency and asking for an explanation as to why these documents had not been produced. (Ex. 5, 5/4/17 Weber Letter.) Further, given the absence of these highly relevant documents from Northwest's production, PECO raised questions about the "preservation, collection, and/or review of Northwest's documents prior to producing them to PECO." (*Id.*)

10. On May 15, 2017, the parties met and conferred about various discovery issues, including this deficiency. Counsel for Northwest stated that a former associate was working under "tight time pressure," had overlooked one folder of relevant documents, and thus they were never reviewed for production. This one folder apparently contained additional relevant documents, including communications with SpartanNash that were identified in the May 4 letter. According to Northwest's counsel, this folder got "buried . . . in the sand" and was forgotten. Counsel stated that they were reviewing these documents and would be making a production in the next "couple days." (Ex. 3, Weber Decl. ¶ 6.)

11. There was no production. On June 20, PECO sent a follow-up email to Northwest's counsel regarding these missing documents. (Ex. 7, 6/20/17 Weber Email.) Northwest stated that it was "looking into the issues and [would] respond shortly." (Ex. 8, 6/22/17 Wix Email.) Without any further response, PECO again followed up on June 30, asking as to the status of the Missing

---

[3] Incredibly, Northwest argued in its motion to dismiss papers that PECO failed to provide sufficient evidentiary facts in its counterclaim. In other words, Northwest argued that PECO's claim should be dismissed for failing to include evidence that Northwest itself failed to produce to PECO.

Documents. (Ex. 7, 6/30/17 O'Neil Email.) This time Northwest did not even respond. (Ex. 3, Weber Decl. ¶ 7.)

12. Additionally, PECO requested that Northwest add Jeffrey Corbin (Northwest's National Director of On-Site Operations) as an additional Northwest document custodian, which Northwest agreed to do. (Ex. 9, 4/4/17 Weber Email; Ex. 3, Weber Dec. ¶ 8.) On Friday, May 19, Northwest's counsel sent an email indicating that there were approximately 5,000 potentially responsive documents from Mr. Corbin's files and that they expected to produce those by Tuesday, May 23. (Ex. 7, 5/19/16 Tarpey Email.) After nearly a month without the promised production, PECO's counsel reached out asking about the status of that production. (Ex. 7, 6/20/17 Weber Email.) Northwest has again failed to respond and has yet to produce any of these records which they previously agreed to produce.[4] (Ex. 3, Weber Decl. ¶ 9.)

13. Instead of producing these relevant documents, or even responding to PECO's counsel, Northwest has instead publicized the terms of PECO's settlement offer discussed at the parties' December settlement conference with the Court. After the Court notified the parties that it would be denying Northwest's motion for bifurcation and an expedited hearing, Northwest then went to the trade press to discuss PECO's settlement offer. Specifically, Northwest took the key term contained in PECO's draft, Rule 408 protected settlement communication—the confidentiality provision—and shared it with media. Jim Riff, Northwest COO, gave the following media quote: "PECO had offered to pick up the pallets if Northwest would promise not to tell Pallet Nation that they (PECO) were loading them by hand from an outside storage area which we would not promise to do." In so doing, Northwest abused the confidentiality (and decorum)

---

[4] As PECO stated in an earlier motion to compel, "PECO has been left without any other options as Northwest has repeatedly promised to provide the requested relevant documents and has failed to do so." (Dkt. No. 104 at p. 2; *see also id.* ¶ 8, 11, 12-13; Dkt. No. 77 ¶ 4.)

associated with the Court's settlement conference. (*See* Ex. 10, June 2017 Pallet Profile Recycle Record.)

14. Pursuant to Local Rule 37.2 and this Court's standing orders on discovery motion practice, counsel for PECO has made a good faith effort to consult with counsel for Northwest by telephone in order to resolve this dispute. Specifically, PECO's counsel, including Bill O'Neil and Thomas Weber conferred by telephone with counsel for Northwest, Daniel Tarpey and David Wix, on May 15, 2017. PECO also sent numerous emails regarding these issues which went completely unaddressed by Northwest's counsel. Through no fault of PECO's counsel, the parties have been unable to reach an accord.

## ARGUMENT

15. Under Rule 26, parties are entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad or indifferent." *Northington v. H&M Int'l*, No. 08-cv-6297, 2011 WL 663055, at *10 (N.D. Ill. Jan. 12, 2011) (Mason, J). (internal quotations omitted). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (Denlow, J.). The Court has broad discretion whether to compel discovery. *Id*.

16. There can be no dispute that the documents from the "buried" folder overlooked by the former associate are relevant and responsive to the issues in this case. As such, they must be produced. FED. R. CIV. P. 26(b)(1); *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Tit. Ins.*

7

*Co.*, No. 00 C 5658, 2002 WL 1433584, at *6 (N.D. Ill. July 2, 2002) (Conlon, J.) ("Litigants must be acutely aware of their discovery obligations; Rule 26(e)'s provisions are not optional. A litigant with knowledge and possession of undisclosed documents has an affirmative obligation to review prior discovery responses, determine the documents' responsiveness and seasonably produce those documents if possible."); *Danis v. USN Comm'ns, Inc.*, Case No. 98 C 7482, 2000 WL 1694325, at *33 (N.D. Ill. Oct. 23, 2000) (Schenkier, M.J.) ("Thus, along with the duty of preservation, there exists a concomitant obligation by all parties to produce the discoverable information within their custody and control."). In fact, Northwest's counsel has agreed to produce these documents—they have just failed to live up to that promise, once again.

17. Further, based on the documents produced by third parties, it appears that many of the documents from the "buried" folder are likely highly relevant to the issues in this case. For example, Northwest failed to produce documents sent to and/or from Mr. Riff regarding, among other things, the relationship between Northwest and SpartanNash, PECO's Asset Recovery Program, and the handling of PECO pallets.[5] (*See* Weber Decl. ¶¶ 3-4.)

18. Northwest's only excuse for failing to produce these documents in a timely fashion is that a former associate let them slip through the cracks. Regardless of whether that excuses their prior failure to produce these documents, it does nothing to excuse their current refusal and/or inability to produce the documents in the three months since PECO has brought it to their attention. To be sure, Northwest's counsel has found time in those three months to email PECO's counsel, publicize PECO's confidential settlement offer and instruct at least one third-party subpoena recipient to refuse to produce documents.

---

[5] Northwest's apparent inability to produce these documents in the past three months raises serious spoliation concerns. In the event that Northwest continues to be unable to produce these documents, PECO may be forced to seek spoliation sanctions.

19. Likewise with the documents from Mr. Corbin. Again, Northwest has agreed to produce these documents—it has just completely failed to do so.

20. Northwest's failures are particularly concerning given their expressed desire for an expedited timeline for resolution of this case. *See Fidelity Nat'l Title Ins.*, 2002 WL 1433584, at *6 ("Rule 26 is premised on the notion that timely disclosure of relevant information, even harmful evidence, promotes a speedy and just resolution of the dispute.").

21. Apparently nothing short of a motion to compel and/or an express order from the Court will force Northwest to comply with its discovery obligations. PECO presently seeks such an order so that it can move toward a timely resolution of this litigation.

22. Given Northwest's repeated failures to engage in discovery, PECO further seeks its attorneys' fees and costs in bringing the instant motion.

23. Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

24. Federal Rule of Civil Procedure 37 provides another basis for sanctions:

> Under the rule, when a party engages in abusive and obstructive discovery tactics by failing to properly respond to discovery requests in any way, the court may impose sanctions directly, without first issuing an order to compel discovery. The federal discovery rules give ample notice to litigants regarding how to properly conduct themselves. In a discovery disclosure system, designed to operate insofar as possible without judicial intervention, issuance of a court order in the first instance is unnecessary before a violation of the rule can be found.

*Dotson v. Bravo*, 202 F.R.D. 559, 570 (N.D. Ill. 2001) (Rosemond, M.J.).

25. Courts have not hesitated to use Rule 37 and/or Section 1927 to impose monetary sanctions on a party that is noncompliant and evasive in discovery.[6] *See, e.g.*, *Dotson*, 202 F.R.D. at 570 (imposing sanctions under Rule 37); *Lorillard Tobacco Co v. Elston Self Service Wholesale Groceries, Inc.*, 259 F.R.D. 323, 328 (N.D. Ill. 2009) (Ashman, M.J.) ("[T]he record evinces strong scents of noncompliance and evasive conduct. Plaintiff continually requested information and Defendants did not provide it, forcing Plaintiff to expend time and money filing motions. Only after Plaintiff filed motions did Defendants produce these documents. This is exactly the type of behavior contemplated by Rule 37's fee-shifting provision."); *PS Promotions, Inc. v. Stern*, Case No. 97 C 3742, 2001 WL 293033, at *9 (N.D. Ill. Mar. 23, 2001) (Pallmeyer, J.) ("Plaintiff's attorneys refusal to respond promptly to discovery . . . and silence in response to Defendants' repeated contacts, unreasonably multiplied proceedings in this case."); *see also Moore v. Doe*, 108 F.3d 1379, at *2 (7th Cir. 1997) ("We think that the repeated pattern of delay and avoidance demonstrated by Moore constitutes a sufficient basis alone from which to infer that his actions were indeed deliberate and meant to cause frustration."); *Fabio v. Diversified Consultants, Inc.*, No. 13-cv-524, 2014 WL 794259, at *1-2 (W.D. Wis. Feb. 27, 2014) (awarding attorneys' fees for motion to compel when defendant provided only "empty promises" regarding when it would provide the requested discovery).

26. Here, Northwest has essentially refused to produce documents until forced to do so by either PECO raising the issue to the Court or the Court issuing an order compelling production. PECO should not be forced to burden the Court simply because Northwest has failed to comply with its discovery obligations.

---

[6] In fact, in the face of discovery abuses, many courts have dismissed the filed action entirely and/or entered a default judgment, a harsh sanction PECO is not seeking here. *See, e.g.*, *Hindmon v. Nat'l-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 621-22 (7th Cir. 1982) (collecting cases where courts have affirmed dismissal as a sanction for repeated discovery abuses).

27. For the reasons set forth above, PECO requests that the Court enter an order compelling:

- Northwest to produce ***all*** responsive documents in its possession, custody or control by July 21, 2017;

- Northwest to pay PECO's fees and costs in bringing this motion in an amount to be determined; and

- Any other relief that the Court deem just and proper.

Respectfully submitted,

PECO Pallet, Inc.

By: /s/ William C. O'Neil
William C. O'Neil
Daniel D. Rubinstein
Kathryn W. Bayer
Thomas G. Weber
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
(312) 558-5600

*Attorneys for PECO Pallet, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney, upon oath, hereby certifies that a copy of the foregoing Motion to Compel the Production of Documents by Northwest Pallet Supply Co. was served via CM/ECF upon the parties listed below on July 11, 2017:

> Daniel W. Tarpey
> David G. Wix
> TARPEY WIX LLC
> 225. W. Wacker Dr., Suite 1515
> Chicago, IL 60606
> (312) 948-9090
>
> *Attorneys for Northwest Pallet Supply Co.*

By: /s/ Kathryn W. Bayer