IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PECO PALLET, INC., | ) | |
| | ) | Case No.: 15-cv-6811 |
| Plaintiff, | ) | |
| | ) | Honorable Andrea R. Wood |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| NORTHWEST PALLET SUPPLY CO., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| NORTHWEST PALLET SUPPLY CO., | ) | |
| | ) | Case No.: 15-cv-50182 |
| Plaintiff, | ) | |
| | ) | Honorable Andrea R. Wood |
| v. | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| PECO PALLET, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**NORTHWEST PALLET'S
MOTION TO COMPEL AND TO EXTEND DISCOVERY FOR LIMITED PURPOSES**

Northwest Pallet Supply Co. ("Northwest Pallet"), through its counsel, Tarpey Wix LLC, for its Motion to Compel and to Extend Discovery for Limited Purposes, states the following:

**INTRODUCTION**

1. The purpose behind this motion is to bring to the Court's attention PECO's attempts to withhold crucial documents with respect to an agreement PECO reached with a non-party, national retailer ▮▮▮▮▮▮▮▮. As the Court is aware, PECO has filed a counterclaim for civil conspiracy in this case and has alleged that ▮▮▮▮▮▮▮ is the co-conspirator with Northwest in regards to some unlawful use of PECO pallets. However, PECO never named ▮▮▮▮▮▮▮ as a Defendant to its civil conspiracy claim. The reason why was only recently

discovered—PECO entered into a Settlement Agreement with ███████████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████. Northwest only recently discovered the existence of this Settlement Agreement which was entered into over six months ago and which should have been produced long ago by PECO because of an additional subpoena it served on ███████████████ ████████████████████. While PECO ultimately and reluctantly produced its settlement agreement with ████████ literally seconds before the start of the deposition of the relevant ████████ witness, for reasons discussed herein, PECO's conduct and refusal to produce further documents leading up to and culminating in the settlement agreement reached with ████████ warrants further discovery to undue the prejudice caused by PECO's discovery conduct in this regard.

2. Secondly, on the day of the fact discovery closure date (which is the date of the filing of this motion), PECO has produced an agreement with a grocery distributor, ████████, Inc. Northwest should be allowed limited discovery in relation to the ████████ agreement in order to flush out the circumstances surrounding that agreement.

**ARGUMENT**

**I. Documents Relating to PECO's ███████████████████████████████████**

    **A. PECO's Counterclaim Alleging ████████ as Co-Conspirator With Northwest Pallet and Discovery Related Thereto**

3. On November 2, 2016, PECO filed its counterclaims against Northwest Pallet, including its "Third Counterclaim: Civil Conspiracy" in which PECO alleges that "Northwest ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████." Docket No. 100, ¶ 46. PECO

further alleges in its civil conspiracy counterclaim that "█████████████████████████████████████████████████████████████████████████████" Docket No. 100, ¶49.

4. In order to take discovery on PECO's claims of the alleged civil conspiracy, on or about January 31, 2017, Northwest Pallet served a subpoena for deposition on the ██████ employee who was most involved in the communications with Northwest Pallet and PECO regarding ████████ handling of pallets at its distribution centers. (Exhibit 1.)

5. Then, on February 13, 2017, PECO served a deposition subpoena and a subpoena for documents on ████████. (Exhibit 2.)

6. Because the parties were actively engaging in extensive document productions vis-à-vis one another and both parties had filed motions to dismiss the pending claims, including PECO's counterclaim for civil conspiracy, the parties agreed to not pursue the depositions of non-party customers such as ████████ until the motions to dismiss were ruled upon by the Court.

7. On July 7, 2017, PECO made a supplemental production containing what purported to be an "█████████████████████████████████████████████████████████. (Exhibit 3.)

8. Once the Court had entered its Minute Order on September 30, 2017, with regard to the parties' respective motions dismiss and denied Northwest Pallet's motion to dismiss PECO's civil conspiracy claim (Docket No. 161), Northwest Pallet re-initiated its efforts to get the deposition of ████████████████ re-scheduled. Northwest Pallet was unaware of any efforts of PECO attempting to reschedule the ████████ deposition and was unaware of

any communications that had been taking place between PECO's counsel and ███████ over the interim several months (which will be discussed below).

9. On December 11, 2017, Northwest Pallet was able to confirm the rescheduled deposition of ███████ to proceed on January 10, 2018 in the office of ███████ counsel in Grand Rapids, Michigan. Counsel for Northwest Pallet promptly notified counsel for PECO of the re-scheduling of ███████ deposition (which Northwest had first subpoenaed on January 31, 2017).

**B. PECO's Production of the ███████ Affidavit**

10. Despite having known about Northwest Pallet's intent to take the deposition of ███████ since January 31, 2017, on December 29, 2017, twelve days before the deposition of ███████ was scheduled to proceed, PECO produced an affidavit of another ███████, attached hereto as Exhibit 4.)

11. Attempting to figure out the reasons behind ███████

12. However, while remaining suspect of the timing of and the circumstances surrounding PECO's service of the ███████ (which was executed on December 18, 2017 and not served until December 29, 2017), Northwest served two additional subpoenas – ███

4

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

13. On the afternoon of January 9, 2018, the day before the ██████ depositions were scheduled to proceed, counsel for ██████ produced 25 pages of documents responsive to the subpoena. ██████ production contained a few drafts of the ██████ but also contained communications revealing that SpartanNash and its counsel had been communicating with Winston & Strawn for several months.

**C. Northwest Pallet Learns About The PECO ██████ Settlement Agreement**

14. During its review of the documents produced by ██████ counsel, it was discovered, for the first time, that apparently PECO had entered into some sort of settlement agreement with ██████ at least five months earlier while discovery on PECO's civil conspiracy claim was ongoing – sometime before August 11, 2017.

15. Specifically, in an August 11, 2017 email from William O'Neil (counsel for PECO) to ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

16. Upon learning for the first time, on the eve of the ██████ depositions, that PECO had entered into a settlement agreement with ██████ sometime prior to August 11,

5

2017 during the pendency of this case in which PECO has alleged ███████ as a co-conspirator with Northwest, the undersigned counsel immediately reached out to both ███████ and to PECO requesting immediate production of the settlement agreement and related communications. Counsel for non-party ███████ said it had produced all it was going to produce and directed me to PECO to obtain further documents.

17. Later that evening on January 9, 2018, just moments prior to leaving for ███████ ███████████████████████████████████, the undersigned emailed counsel for PECO demanding the documents revealed in that day's ███████ production. In response, PECO took the untenable position that the documents were not "responsive to any of NWP's document requests to PECO." The undersigned replied informing PECO that's it position was not supported and demanded, once again, that the documents be produced immediately so as to not prejudice Northwest's ability to conduct the ███████ depositions ging forward the next morning. (See the January 9, 2018 email exchange between the undersigned counsel for Northwest and counsel for PECO, attached hereto as Exhibit 8.)

18. To further address PECO's position that somehow this settlement with ███████ was not responsive, the undersigned's partner, David Wix, sent counsel for PECO another email later that evening pointing out five, separate document requests which cover production of the settlement agreement with ███████. Further, Mr. Wix raised the additional, valid point that the settlement agreement should be produced "because it clearly goes to the potential bias of the ███████ witnesses if there is, as it would appear from the documents produced, ███████████████████████████████████████████████ ███████████████████████████████████." (See email exchange attached hereto as Exhibit 9.)

6

19. Then, the next morning on January 10, 2018 at the law offices of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Counsel for PECO indicated that he had brought a copy of the settlement agreement with him and would produce only if it "ended the debate" – meaning Northwest would no longer seek any discovery in relation to the settlement agreement and the circumstances under which it came into existence. The undersigned counsel for Northwest agreed there would be no more discovery sought from ▇▇▇▇▇▇▇▇ on the issue but refused to "horse trade" without even having the benefit of reviewing the agreement that should have been produced months ago without any conditions. Counsel for PECO refused to tender the settlement agreement prior to the start of the first ▇▇▇▇▇▇▇▇ deposition.

20. Later that afternoon and after conducting a five hour deposition of ▇▇▇▇▇▇▇▇ first witness, literally seconds before the start of the deposition of the second ▇▇▇▇▇▇▇▇ deposition, counsel for PECO tossed the Settlement Agreement across the table to the undersigned. (A copy of the Settlement Agreement and Mutual Release between PECO and ▇▇▇▇▇▇▇▇ is attached hereto as Exhibit 10.)

21. While counsel for Northwest was able to briefly review the Settlement Agreement for a few moments prior to the second ▇▇▇▇▇▇▇▇ deposition and during breaks, PECO's tactics were clearly designed to prevent disclosure of the agreement with ▇▇▇▇▇▇▇▇ and hinder Northwest's ability to conduct an effective deposition on the arrangement between ▇▇▇▇▇▇▇▇ and PECO arising out of the settlement agreement. The parties further communicated about the disagreement over the responsiveness of the Settlement Agreement and communications relating

thereto after the ▓▓▓▓▓▓ depositions were concluded. (See email exchange between counsel for Northwest and PECO attached hereto as Exhibit 11.)

22. However, a few things were revealed by the settlement agreement and the communications relating thereto that bear mentioning here and which warrant additional discovery. First, the settlement agreement was entered into on June 29, 2017 – more than six months before the ▓▓▓▓▓▓ depositions – but never produced. (Ex. 10.)

23. Second, the settlement agreement was entered into for the express purpose of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Ex. 10 at ¶¶ 2(a), 2(c).)

24. Third, the Settlement Agreement was expressly conditioned upon ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ which was attached (in executed version) as Exhibit A to the Settlement Agreement and contained the same date as the Settlement Agreement -- June 29, 2017. (Ex. 10 at ¶ 2(a) and Ex. A [PECO-0090376-377].) This is the same ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that PECO willingly produced in his case on July 7, 2017. So PECO took the position that the ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ was responsive in discovery but, at the same time, the settlement agreement itself that PECO reached with a non-party that PECO had identified as a co-conspirator in this case in order to elicit the "Use Agreement" was not responsive. Clearly PECO was attempting to conceal the real reasons behind why ▓▓▓▓▓▓ agreed to enter into an agreement with PECO for the handling of PECO pallets – that PECO was threatening litigation.

25. Fourth, while PECO will undoubtedly attempt to use the ▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as evidence of market rates for services that

8

recyclers provide, neither ████████████████████████████████████████████

████████████████████████████████████████████.[1] In fact, ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

██████.

26. Fifth, as evidenced in an email from PECO's counsel to counsel for ████████ on December 19, 2017, PECO was attempting to further improperly influence the testimony of non-party witnesses by requesting a conference call "████████████████████████ ████████." (Exhibit 12.)

27. The most egregious thing about PECO's conduct with regard to the Settlement Agreement with ████████ and related communications is that Northwest would never have even found out about this agreement at all had it not subpoenaed ████████ law firm upon receiving the ████████████ and the communications produced in response to that subpoena reflected the existence of some settlement agreement.

28. It should not be lost on this Court that in this case PECO has aggressively sought sanctions against Northwest and its counsel for not producing documents in a timely fashion even though there had been no discovery cut-off by that point and PECO had not been prejudiced in the slightest. Northwest and its counsel even fell on their proverbial sword in this regard admitting that their own self-imposed deadline to produce documents was overly optimistic in

---

[1] While Northwest is still waiting the receipt of the transcripts of the ████████ witnesses, it will provide the excerpts of testimony relevant to this motion prior to the initial presentment of this motion.

light of several developments pointed out to the Court. PECO only agreed to withdraw its sanctions request after Northwest discovered that PECO had failed to produce approximately 20,000 documents which it should have produced under the governing ESI protocol. Rather than seek sanctions for PECO's conduct, Northwest allowed PECO the opportunity to withdraw its sanctions motion so the parties could focus on getting discovery done.

29. Here, while Northwest Pallet does yet not seek sanctions, the record establishes that PECO made every effort to withhold blatantly relevant documents in an effort to prejudice Northwest's ability to conduct discovery. Accordingly, with regard to the ▮▮▮▮▮ Settlement Agreement issue, Northwest respectfully requests that the Court enter an Order compelling that PECO produce the following: (i) every communication that PECO's in-house counsel or Winston & Strawn has had with ▮▮▮▮▮ since the pendency of this lawsuit up to an including all communications relating to and culminating in the Settlement Agreement PECO ultimately reached with ▮▮▮▮▮; and (ii) every communication that Winston & Strawn has had with any non-party, subpoena recipient or potential witness in this case. Further, depending on what those documents reveal, Northwest Pallet would request that it be allowed to reserve its right to depose either a Winston & Strawn or ▮▮▮▮▮ witness.

30. Counsel for Northwest has conducted a discovery conference with counsel for PECO on these issues pursuant to Local Rule 37.2. (See Declaration of Daniel W. Tarpey attached hereto as Exhibit 13.)

## II. PECO's Production of Its Agreement With ▮▮▮▮▮

31. In furtherance of its efforts to misleadingly cast "agreements" with third parties as evidence of the fair market value for the services provided by recyclers like Northwest Pallet while attempting to hamstring Northwest Pallet's ability to take discovery on the circumstances

behind the rates reflected in those agreements, on the day fact discovery was scheduled to close, January 22, 2018 (which is also the date of the filing of this motion), PECO served several documents.

32. Counsel for PECO conveniently states in her cover letter of today's production that: "These are documents that we may rely on at trial and are not responsive to NWP's Requests for Production or PECO's responses thereto." (See. Ex. 14.) Putting aside for the moment the disingenuous nature of this statement, the very last document in PECO's January 22nd document production is a two-page "███████████████████████" which PECO apparently entered into with ████████. on or about December 22, 2017 – a month prior to the date of closing of fact discovery but only produced on the fact discovery closure date. (See Ex. 15.)

33. The agreement between PECO and ████████ includes a rate structure by where PECO agrees to pay ████████ a certain "per pallet" fee for every PECO pallet ████████ puts on a trailer place by PECO at the premises. (Ex. 15 at pp. 1-2.) As PECO has done with other agreements it has produced in this case, PECO will undoubtedly attempt to use this agreement as evidence of the market value for some of the services recyclers provide to rental pallet companies in assisting in the return of rental pallets.

34. In the course of discovery, Northwest Pallet has uncovered other reasons driving the rates behind the agreements produced by PECO in this case that establish these rates are not market. By example, the ████████████████ discussed above establishes that there was a driving force – i.e. PECO's litigation threats against ████████ – which resulted in the culmination of the ████████████████ and the rates contained therein.

35. Accordingly, with the ████████ agreement being produced on the fact discovery deadline, Northwest Pallet should be granted the opportunity to conduct limited discovery to determine the circumstances surrounding the agreement and the rates contained therein. For instance, did PECO threaten litigation against ████████ as it did against ████████ in order to bully ████████ into the agreement? Was the agreement the part of some larger settlement agreement? Where the rates reflected in the agreement the result of an arms-length negotiations or where they forced upon ████████ for any other reason? These are all areas, especially in light of PECO's conduct with respect to ████████ and other facts uncovered in connection with regard to other "fair market value" agreements PECO has produced in this case, that Northwest Pallet should be entitled to probe the limited discovery of a document subpoena on ████████, one deposition on ████████████ and a document subpoena on Winston & Strawn.

36. Northwest Pallet admits that, in light of the timing of the production of the ████ ████ agreement on the day fact discovery closes, the parties have not undergone the requisite "meet and confer" pursuant to Local Rule 37.2. The undersigned will make every effort to do so prior to the presentment of this motion.

WHEREFORE, for the foregoing reasons, Northwest Pallet Supply Co., respectfully requests that the Court grant its motion to compel and enter an order compellingthe limited discovery sought herein and for any other relief this Court deems proper and just.

**DATED**:  January 22, 2018

                                  Respectfully submitted,

                                  **Northwest Pallet Supply Co.**

                                  /s/ Daniel W. Tarpey
                                  Tarpey Wix LLC
                                  *Attorneys for Plaintiff*

Daniel W. Tarpey
David G. Wix
Matthew M. Showel
**TARPEY WIX LLC**
225 W. Wacker Drive, Suite 1515
Chicago, IL 60606
(312) 948-9090 Office
(312) 948-9105 Fax

**CERTIFICATE OF SERVICE**

I, undersigned attorney, hereby certify that on January 22, 2018, I electronically filed Northwest Pallet Supply Co.'s Motion to Compel and To Extend Discovery for Limited Purposes Under Seal with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    /s/ David G. Wix
David G. Wix
Tarpey Wix LLC
225 W. Wacker Drive, Suite 1515
Chicago, IL 60606
(312) 948-9090
dwix@tarpeywix.com
*Attorney for Plaintiff*