**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PECO PALLET, INC. | ) | Case No. 1:15-cv-06811 |
| Plaintiff, | ) ) | Honorable Judge Andrea R. Wood |
| v. | ) ) | Magistrate Judge Michael T. Mason |
| NORTHWEST PALLET SUPPLY CO. | ) ) | |
| Defendant. | ) ) | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORTHWEST PALLET SUPPLY CO., | ) ) | Case No.: 3:15-cv-50182 |
| Plaintiff, | ) ) | Honorable Judge Andrea R. Wood |
| v. | ) ) | Magistrate Judge Michael T. Mason |
| PECO PALLET, INC., | ) ) | |
| Defendant. | ) ) | |

**PECO'S MOTION TO EXCLUDE DR. JUDD MICHAEL'S**
<u>**REPORT AND RELATED TESTIMONY**</u>

William C. O'Neil
Daniel D. Rubinstein
Thomas G. Weber
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601
(312) 558-5600

*Attorneys for PECO Pallet, Inc.*

June 20, 2018

PECO Pallet, Inc. ("PECO"), by and through its undersigned counsel, respectfully moves this Court to exclude Dr. Judd Michael's report and related testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## INTRODUCTION

Dr. Judd Michael purports to give an expert opinion on measuring the amount of unjust enrichment damages that Northwest is owed for stacking, sorting, and loading PECO's pallets. Instead of using a methodology capable of measuring the ***value of the services*** (or, relatedly, the costs to Northwest to provide those services), he offers "six ways" to calculate the ***value of a PECO pallet to PECO*** (hereinafter the "Value of the Pallet Methodology"). According to Dr. Michael, when you drop off a $50 shirt at the dry cleaner for services worth $1.50, you should have to pay for the value of the shirt ($50) to get it back, not the value of the services ($1.50). That—on its face—is a legally inappropriate measure of unjust enrichment damages and should therefore be excluded from this trial.

Dr. Michael advocates the Value of the Pallet Methodology for a simple reason: it exponentially increases the potential damages award for Northwest to upwards of $20 per pallet. But PECO's experts (Dr. Guryan and Dr. Quesada) and Northwest's other expert (Dr. Ray, who flatly disagrees with Dr. Michael) have all concluded that the ***value of Northwest's handling services*** are a fraction of the value of a PECO pallet. Specifically, the other three experts in the case on both sides of the aisle value those services at between $0.28 and $4.10 per pallet—orders of magnitude *lower* than Dr. Michael's Value of the Pallet Methodology. Allowing Dr. Michael to testify about this Value of the Pallet Methodology is not only unreliable and untested, but also extremely prejudicial.

At his deposition, Dr. Michael conceded that he is aware of no other expert, court, or academic publications supporting the Value of the Pallet Methodology as a measure of unjust enrichment damages. He hopes this Court will be the first. He likewise admitted that his methodology has never been tested, subject to peer review, nor accepted within the pallet community (or any community for that matter). To make matters worse, Dr. Michael also testified that, although he was purporting to give an expert opinion on unjust enrichment damages, he was not provided with ***any guidance*** about the prevailing legal standard for unjust enrichment. He did not even try to make sure his opinions comported with the applicable law on unjust enrichment. It is therefore unsurprising that Dr. Michael's opinions are contrary to Illinois law.

This Court's gatekeeping role under *Daubert* requires it to exclude testimony precisely such as that of Dr. Michael—untested, unaccepted, unsupported, and highly prejudicial.

## SUMMARY OF DR. MICHAEL'S EXPERT OPINIONS

Dr. Michael is a Professor in the Department of Agricultural and Biological Engineering at Penn State University and has a Ph. D. in Wood Products. (Ex. A, Michael Report at 1.) He teaches courses in the BioRenewable Systems major at Penn State, and his research focuses primarily on business management issues related to wood-based and packaging industries. (*Id.*)

Nevertheless, Dr. Michael's expert report in this matter "focus[es] on . . . questions related to unjust enrichment." (*Id.* at 2.) Namely, Dr. Michael purports to offer an opinion regarding "whether, and if so the extent to which, PECO has been unjustly enriched by the return of PECO pallets to PECO depots as provided by [Northwest]."[1] (*Id.*)

---

[1] Of course, "whether" PECO has been unjustly enriched is an issue for the jury, not for Dr. Michael.

2

First, Dr. Michael concludes that the analyses he jointly performed with Dr. Charles Ray[2] "confirm that [Northwest's] services in returning PECO assets to PECO are providing unjust enrichment to PECO." (*Id*. at 3.) This opinion is based on "the relationship between PECO and the rest of the supply chain, and how PECO's business model is at least partially dependent on (and enriched by) the actions of pallet recyclers such as [Northwest]." (*Id*. at 6.) Indeed, Dr. Michael spends nineteen pages reviewing the pallet industry and PECO's background and business model, rambling at length without a single supporting citation. (*Id*. at 6-24.) Dr. Michael's focus perhaps could be have been better served by incorporating into his report the legal standard that governs his unjust enrichment analysis; not once in the report does he even allude to the legal standard for unjust enrichment.

After concluding that Northwest has "expended its own resources to confer considerable benefits to PECO," Dr. Michael proceeds to render an opinion on the "unjust enrichment values conferred to PECO." (*Id*. at 25.) Dr. Michael proposes "six ways to calculate the value of a recovered pallet to PECO." (*Id*. at 26.) These "six ways" are: (1) Replacement Cost, or calculating the value of a lost pallet by using its replacement cost; (2) Replace vs. Repair, or comparing the cost to obtain a new pallet versus the costs to repair a used PECO pallet; (3) Book Value, or using the value at which PECO pallets are carried in its books; (4) Revenue Per Pallet, or the potential annual and lifetime revenue each pallet is estimated to earn; (5) Earnings Per Pallet, or the average cash flow each pallet earns per issue; and (6) Lost Pallet Fees, or using the fees PECO charges a user if it deems the pallets have been lost as a proxy for the value of the pallet. (*Id*. at 26-28.)

---

[2] Dr. Charles Ray served his own expert report in this matter, which is also the subject of a *Daubert* motion filed concurrently herewith.

3

Dr. Michael does not opine that any one of these six methods of calculating unjust enrichment damages is the correct method, or even the best or most appropriate method. Instead, Dr. Michael provides a range "of the possible values for PECO pallets that have been returned such that PECO can benefit from their re-issue to renters." (*Id.* at 28.)

At bottom, Dr. Michael's expert damages opinion is that PECO has been unjustly enriched by an amount ranging from $2.22 per pallet to $21.00 per pallet, and anywhere in between, though five of the six purported methods hover around $18 per pallet. (*Id.* at 28, Table B-1.) That literally gives the jury thousands of alternatives to choose from, each of which has no basis in law, fact, or industry convention. Dr. Michael's opinions are self-serving, prejudicial valuations that serve to anchor the damages calculation far above what the law permits.

## LEGAL STANDARD

The admissibility of expert testimony and opinions is governed by Federal Rule of Evidence 702 and the standard articulated by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Federal Rule of Evidence 702 permits expert testimony only if "scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Where expert testimony may assist the trier of fact, Rule 702 requires a district court to act in a "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. In assessing a motion to exclude testimony under Rule 702, a court should consider whether the proposed opinion witness (1) is qualified, (2) has employed a reliable methodology, (3) proposes to offer opinions that follow rationally from the application of his or her "knowledge, skill, experience, training, or education," and (4) presents testimony on a matter that is relevant to

4

the case at hand, and thus helpful to the trier of fact. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert*, 509 U.S. at 589-93.

"The purpose of the *Daubert* inquiry is to scrutinize proposed expert witness testimony to determine if it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire*, 526 U.S. at 152). The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the *Daubert* standard. *Lewis*, 561 F.3d at 705.

## ARGUMENT

Dr. Michael failed to review (or make any assumptions about) the applicable law on unjust enrichment damages, even though he purports to provide expert testimony on precisely that topic. Instead Dr. Michael uses a measure of damages—the Value of the Pallet—that is unsupported by law and one that Dr. Michael invented for this litigation. As a result, Dr. Michael's opinions are based on the wrong legal standard for measuring unjust enrichment damages and are inadmissible.

Compounding this error, Dr. Michael's methodologies are unreliable. No one in the pallet industry (or any industry for that matter) has ever accepted the Value of the Pallet Methodology for measuring unjust enrichment damages. Dr. Michael admitted as much. His proffered opinions are completely untethered from any standard of reliability and do not stand up to the level of "intellectual rigor" that *Daubert* demands. The opinions should also be excluded as unreliable.

**A.     Dr. Michael's Damages Opinions Are Based on the Incorrect Legal Standard**

Dr. Michael unequivocally states that he does not know what the appropriate legal measure of unjust enrichment damages is under Illinois law. (Ex. B, Michael Dep. Tr. 128:5-8.) Yet he purports to offer a legal opinion that PECO has been unjustly enriched and proposes "six ways" to calculate unjust enrichment damages. Dr. Michael uses the wrong legal measure of unjust

5

enrichment damages, and therefore his opinion must be excluded. *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible.").

Under Illinois law, "unjust enrichment does not seek to compensate a plaintiff for loss or damages suffered but seeks to disgorge a benefit that the defendant unjustly retains." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011). "The measure of damages for an implied in law contract is the amount by which defendant has been unjustly enriched or the value of the actual benefit received by defendant, and recovery is usually measured by the reasonable value of the services performed by plaintiff." *Champaign Cty. v. Hanks*, 41 Ill. App. 3d 679, 684 (1976) (affirming trial court's unjust enrichment damages award of the "reasonable value" of the services rendered had the defendant "paid for such services"). Put differently, "the measure of recovery for the benefit received by the other is the market value of such services irrespective of their benefit to the recipient." *Id*. (quoting Restatement (First) of Restitution § 152).

Though the proper measure of unjust enrichment damages is the "market value" of the services PECO received, Dr. Michael purports to base his calculations of unjust enrichment damages on the "true value to PECO of 'lost' and 'returned' pallets." (Ex. A, Michael Report at 2, ¶ 10.) Not only is his opinion flatly contrary to Illinois law, but "true value" is a term that Dr. Michael came up with on his own. (Ex. B, Michael Dep. Tr. 20:9-15.) This concept of "true value" has not been written about or studied in economic or accounting literature. (*Id*.) Dr. Michael's legal error—though fatal to the admissibility of his opinion—is unsurprising considering he does not know the elements of unjust enrichment under Seventh Circuit law. (*Id*. 40:16-21.) Nor has he ever studied unjust enrichment or taught any classes on the measurement of damages for unjust enrichment or economic theory. (*Id.* 51:15-53:1.) Put succinctly: Dr.

6

Michael does not know the "appropriate legal measure of . . . unjust enrichment damages under Illinois law." (*Id*. 128:5-8.)

This Court already weighed in on the appropriate measure of unjust enrichment damages in this very case: "[t]he question is therefore what benefit PECO received from Northwest's services." (Dkt. No. 118, at 2.) "[I]t appears that the fair market value of Northwest's services may be the proper measure of recovery." (*Id*. at 3.) But Dr. Michael, despite not considering the relevant law or being provided any authority on the correct legal standard, disagrees that the Court "accurately state[d] the measure of damages" in its order. (Ex. B, Michael Dep. Tr. 153:13-17.)

Dr. Michael's litigation-driven "true value" measurement of unjust enrichment damages is unsupported by controlling law and thus not reliable and not helpful to the trier of fact. At bottom, Dr. Michael's opinion "is not an 'expert' opinion, but rather a personal opinion about what [damages Dr. Michael] believes should apply in this case." *Loeffel Steel*, 387 F. Supp. 2d at 806. Because Dr. Michael's damages opinions are based on the wrong legal standard, his testimony must be excluded. *See, e.g.*, *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 745 (N.D. Ill. 2009) (excluding expert that "applied the incorrect legal standard in formulating damages" under the Computer Fraud and Abuse Act); *Medicines Co. v. Mylan Inc.*, 2014 WL 1227214, at *5 (N.D. Ill. Mar. 25, 2014) (excluding expert because he "applie[d] the wrong legal standard regarding commercial success" in patent infringement matter); *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, 886 F. Supp. 2d 873, 879 (N.D. Ill. 2012) (excluding expert opinion that did "not provide any authority or other reliable basis for the damages formula he applies").

**B.      Dr. Michael's Methodology is Unreliable and Must Be Excluded**

Dr. Michael's methodology in reaching his unjust enrichment opinion is fatally flawed for a simple reason: there is absolutely no indicia of reliability attached to it. His methodology is not

7

tested or accepted outside of this case. A jury trial on the important issues in this case is not a proper forum for Dr. Michael to "test" his theory for the first time.

Indeed, *Daubert* sets forth the following non-exhaustive factors for the court to consider: "(1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community." *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *2 (N.D. Ill. May 16, 2017) (citing *Daubert*, 509 U.S. at 142). The test for reliability "give[s] the [district] court great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009).

Dr. Michael's proposed expert testimony fails all of the four factors in *Angelopoulos*. But the Court need not take PECO's word for it; Dr. Michael made these admissions himself. His Value of the Pallet Methodology is untested and unaccepted. (Ex. B, Michael Dep. Tr. 20:2-20.) For this reason, it is unsurprising that Dr. Michael is not aware of a single person or court (besides himself) who has put their professional reputation behind his Value of the Pallet Methodology. (*Id.* 129:20-23, 130:9-12, 131:10-17, 132:3-10, 133:5-8, 133:23-134:2.) Dr. Michael stands all by himself in that regard. His proffered testimony must be excluded under Rule 702 and *Daubert*.

   *1.   Replacement Cost*

The first metric Dr. Michael uses to allegedly calculate the value of a lost pallet is the "replacement cost." (Ex. A, Michael Report at 26.) Dr. Michael uses a value of $20.00 or $21.00, which is the approximate cost for PECO to purchase a new block pallet. (*Id.*) In other words, Dr. Michael opines that the value of Northwest's services provided to PECO for returning a used pallet is the cost of a brand new pallet. This is nonsensical.

8

Dr. Michael claims to have used replacement cost to measure unjust enrichment damages because it is a "starting value just to illustrate to the . . . Court that PECO has in some cases, as I cite [in my report], indicated the value of its pallets are $20." (Ex. B, Michael Dep. Tr. 129:2-11.) This opinion is contradicted by the fact (i) PECO only makes ▮▮▮▮ of profit per rental of its pallets, and (ii) the fair market rate of Northwest's services is $ 0.28 to $ 0.30. (*Id*. 31:8-11; 214:9-13.) Of course, the value of a new pallet necessarily contemplates multiple rentals. The value of a pallet to PECO cannot be $20 if it only gets to rent it once for a ▮▮▮▮▮▮▮▮.

In fact, Dr. Michael's purported opinions are so outlandish that no one else has adopted them:

> Q. Has – has the academic community tested the correctness of using replacement cost to measure unjust enrichment damages, sir?
> A. Not that I know of.
> Q. Are there publications adopting the replacement cost methodology for calculating unjust enrichment damages that you're aware of?
> A. Not that I'm aware of.
> Q. Has an expert offered and had accepted this methodology in any case in which you're of, sir?
> A. No.

(*Id.* 129:12-23.) By his own admission, Dr. Michael's "replacement cost" theory fails to satisfy any of the factors in *Angelopoulos*. Again, no one has ever approved or offered this methodology before. Dr. Michael should not be permitted to test his theory before the jury.

### 2. *Replace versus Repair*

The second theory that Dr. Michael uses for his unjust enrichment damages calculation is the "repair vs. replace" value, which compares the cost to obtain a new pallet versus the costs to repair a used PECO pallet. (Ex. A, Michael Report at 26.) When asked if the academic community has tested the correctness of this methodology for measuring unjust enrichment damages, Dr. Michael responded "Not that I know of." (Ex. B, Michael Dep. Tr. 130:19-24.) More specifically:

9

> Q. And has the repair versus replace methodology been accepted by the academic community study in the pallet industry as a – as an appropriate measure of damages in an unjust enrichment claim?
> A. Not that I know of.
> Q. And are you aware of any expert that's offered and had accepted the repair versus replace methodology in an unjust enrichment case?
> A. No.
> Q. And are you aware of any courts which have – have used the repair versus replace methodology in in measuring unjust enrichment damages?
> A. No.

(*Id*. at 131:4-17.)

### 3. *Book Value*

Dr. Michael opines that the third "means for valuing PECO pallets is to use their book value." (Ex. A, Michael Report at 26-27.) This is the value at which an asset is carried in a company's books, calculated by taking the cost of the asset minus the accumulated depreciation. (*Id*.) Again, Dr. Michael has no basis for his opinion regarding the use of book value to measure unjust enrichment damages. His answer to each of the *Daubert* factors for assessing reliability was a succinct and unequivocal "No."

> Q. Let's go to the third line, book value. Has the academic community tested the correctness of using book value for unjust enrichment damages in litigation?
> A. Not that I know of.
> Q. And are you aware of any publications that have used the book value methodology to calculate unjust enrichment damages?
> A. No.
> Q. Are you aware of any expert who's offered and had accepted the book value methodology for calculating unjust enrichment damages?
> A. No.
> Q. And are you aware of any Court that's adopted the book value methodology in calculating unjust enrichment damages?
> A. No.

(Ex. B, Michael Dep. Tr. 131:18-132:10.)

### 4. *Revenue Per Pallet*

According to Dr. Michael, the revenue per pallet is a proper method of calculating unjust enrichment damages because "[r]etrieving pallets from users so that it can reissue them provides value to PECO since the company can then generate more revenue from subsequent renters." (Ex. A, Michael Report at 27.) Dr. Michael opines that PECO's accounting statements reflect an ▇▇▇ in FY 2016 and that the number of ▇▇▇, giving each pallet an ▇▇▇ in 2016. (*Id.*) But, going further, Dr. Michael multiplies the annual revenue per pallet times the expected lifetime of a pallet ▇▇▇. Dr. Michael concludes, then, that a proper calculation of unjust enrichment damages is an astounding $234.00 per pallet. (*Id.*)

Dr. Michael's revenue per pallet methodology is unreliable. *See Vaughn v. Konecranes, Inc.*, 2015 WL 1636431, at *3 (E.D. Ky. Apr. 13, 2015) ("Without any identifiable method of reasoning, [the expert's] testimony is facially unreliable.") If this methodology were accepted, it would mean that PECO would be required to pay Northwest $234 for each pallet that Northwest returns to PECO—a pallet that PECO only makes ▇▇ renting and which is only worth $20 when purchased new. (Ex. B, Michael Dep. Tr. 31:8-11.) But even Dr. Michael recognizes that if the finder of fact were to recognize his opinion, PECO would not stay in business "very long." (*Id.* 33:12-20.) This opinion is so far disconnected from reality that it creates a substantial danger to mislead and confuse the jury.

Indeed, much like every other "theory" he advances, Dr. Michael can provide no basis for his opinion that revenue per pallet is a reliable method for measuring unjust enrichment damages:

> Q. Let's go to revenue per pallet. Are you aware of any academic community literature that's tested the correctness of the revenue per pallet methodology for calculating unjust enrichment damages?
> A. No.

11

> Q. And has the revenue per pallet methodology for calculating unjust enrichment damages been accepted by the academic community?
> A. Not that I know of.
> Q. Are there any publications that you're aware of that have accepted the revenue per pallet methodology to calculate unjust enrichment damages?
> A. If I may call the decision from the Mock case a publication, then I'll say that was considered by the Court.
> Q. Are you aware of any expert that's offered and had accepted the revenue per pallet methodology in an unjust enrichment case?
> A. No.

(Ex. B, Michael Dep. Tr. 132:11-133:8.)

5. *Earnings Per Pallet*

Dr. Michael only offers his fifth method for calculating unjust enrichment damages, "earnings per pallet," because "[a] company might argue that earnings (or cash flow) per pallet is a more meaningful representation of the worth of a pallet." (Ex. A, Michael Report at 27.) It is "[f]or this reason" that Dr. Michael calculated the value of a returned pallet based on its earnings potential to PECO. (*Id.*) Thus, it does not appear that Dr. Michael himself even believes that earnings per pallet is a reliable methodology.

Regardless, Dr. Michael testified that the earnings per pallet methodology has also not been accepted by the academic community.

> Q. Okay. Let's go to the fifth methodology, the annual earnings per pallet. Are you aware of any academic literature which has tested the correctness of this methodology for measuring unjust enrichment damages?
> A. No.
> Q. And has this methodology been accepted by any academic study in the pallet industry, to your knowledge?
> A. No.
> Q. Are you aware of any publications adopting the annual earnings per pallet as a measure of unjust enrichment damages?
> A. No.
> Q. Are you aware of any expert who's offered and had accepted this methodology of measuring unjust enrichment damages?
> A. No.

12

(Ex B., Michael Dep. Tr. 133:9-134:2.)[3]  Just as with each of the previous four proffered methodologies, the "earnings per pallet" methodology fails to meet any standard of reliability.

### 6. Lost Pallet Fees

Lastly, Dr. Michael opines that the fees PECO charges for lost pallets can be used as a "proxy" for the value PECO places on its pallets. (Ex. A, Michael Report at 28.) Dr. Michael cites PECO rental contracts that charge lost pallet fees ▓▓▓▓▓ and a contract with Kraft Heinz wherein PECO charges ▓▓▓▓▓▓▓▓▓. (*Id.*) How a lost pallet fee serves as a "proxy" for measuring unjust enrichment damages is not apparent. PECO charges a lost pallet fee because when a customer loses a pallet, PECO has to replace it. That makes sense—PECO can no longer rent a lost pallet and must buy a new pallet to replace it in its inventory and continue to rent pallets to customers. The lost pallet fee is a "proxy" for the replacement cost of a pallet. But just as with the replacement cost methodology, it is absurd to think a company would pay the value of a new pallet for the labor task of returning a used pallet.

Once again, in offering this theory of unjust enrichment damages, Dr. Michael stands on an island:

> Q. Okay. Last one is lost pallet fees. Has the academic community tested the correctness of the lost pallet fee methodology for calculating unjust enrichment damages?
> A. No.
> Q. Has the lost pallet fees methodology for calculating unjust enrichment damages been tested in any peer-reviewed publications that you're aware of?
> A. No.
> Q. Are you aware of any expert who's offered and had accepted the lost pallet fee methodology for calculating unjust enrichment damages, to your knowledge?
> A. Let me provide the example that the CHEP financial analyst used lost pallet fees in that judgment that was relied on by the Court, if I recall correctly.

---

[3] Through Dr. Michael seems to believe that the court in *Chep USA v. Mock Pallet Company* "partially" accepted the annual earnings per pallet methodology of calculating unjust enrichment, a review of the court's judgment in that matter reveals no such acceptance or reliance by the court. *See Chep USA v. Mock Pallet Co.*, No. 02-cv-02053-BBM, Dkt. No. 238 (N.D. Ga. Aug. 18, 2006).

> Q. Was that an expert witness?
> A. I'm not sure how he was called.

(Ex. B, Michael Dep. Tr. 134:10-135:6.)

But Dr. Michael's reliance on *Chep USA v. Mock Pallet Company*, Case No. 02-cv-02053-BBM (N.D. Ga.), is misplaced. During the trial on damages, an executive for Chep testified regarding the lost pallet fees CHEP charged customers. *Id*., Dkt. No. 238, at 5 (N.D. Ga. Aug. 18, 2006). No expert witness testified regarding lost pallet fees as an appropriate measure of unjust enrichment damages. But even more, *Chep* was decided under Georgia law, not Illinois law. Dr. Michael cannot rely on an inapposite case that does not even accept his proposed methodology to support his otherwise unsound, untested, and unaccepted methodology.

Thus, Dr. Michael's "lost pallet fees" methodology for measuring unjust enrichment damages is unreliable and should be excluded.

### 7. *This Court Should Exercise its Gatekeeping Role to Exclude Dr. Michael's Unreliable Testimony*

As demonstrated above, Dr. Michael fails to offer any meaningful explanation—let alone reliable methodology—to support his damages calculations. Dr. Michael admits that his methodologies are untested, unreviewed, and unaccepted; they should therefore be excluded. *See, e.g.*, *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993) (affirming district court's exclusion of expert who testified she had "no evidence" and "no scientific support for her opinion"); *Smith v. Union Pacific Railroad*, 2017 WL 2656583, at *6 (N.D. Ill. June 20, 2017) (excluding vocational expert who could not describe whether his methodology has been tested or subjected to peer review and during his deposition he "failed to explain where [the] criteria [he relied on] are found or how they are utilized" by other experts in the field).

As the court in *System Development Integration* stated, "[w]ithout a reliable basis, [an expert's] opinion is too speculative to be admissible." 886 F. Supp. 2d at 880. There, the court

14

excluded the plaintiff's expert's damages opinions because the expert did "not provide any authority or other reliable basis for the damages formula he applie[d]" and "provide[d] no analysis, or citation to any reliable basis, in support of" his opinions. *Id*. at 879. And the Seventh Circuit has similarly admonished such unsupported expert opinions, stating:

> Apparently we are supposed to take [the expert's opinion] on faith, because [the expert] did not gather any data on the subject, survey the published literature, or do any of the other things that a genuine expert does before forming an opinion. . . . An opinion has a significance proportioned to the sources that sustain it.

*Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997).

This is no different than the circumstances here with respect to Dr. Michael—his opinions on unjust enrichment provide no analysis or citation to any authority that supports any of his proffered damages methodologies. Dr. Michael is unaware of a single expert who has offered the testimony he intends to offer during trial. And Dr. Michael is unaware of *any* academic literature, studies, or publications that support *any* of the six methodologies he opines are proper methods to calculate unjust enrichment damages. The Seventh Circuit has expressly warned against the very failures that Dr. Michael's proffered testimony suffers. Devoid of any analysis, support, or reasonable basis, Dr. Michael cannot expect the jury to take his conclusions on blind faith alone.

This Court functions as the gatekeeper to ensure that expert testimony is sufficiently reliable to present to a jury, and should therefore exclude Dr. Michael.

## **CONCLUSION**

For these reasons, PECO respectfully requests that this Court grant its motion to exclude Dr. Michael's report and related testimony.

Respectfully submitted,

PECO Pallet, Inc.

By: /s/ William C. O'Neil

15

        William C. O'Neil
        Daniel D. Rubinstein
        Thomas G. Weber
        WINSTON & STRAWN LLP
        35 West Wacker Dr.
        Chicago, IL 60601
        (312) 558-5600

        *Attorneys for PECO Pallet, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned attorney, upon oath, hereby certifies that a copy of the foregoing *PECO's Motion to Exclude Dr. Judd Michael's Report and Related Testimony* was served via CM/ECF upon the parties listed below on June 20, 2018:

>Daniel W. Tarpey
>David G. Wix
>Matthew Showel
>TARPEY WIX LLC
>225. W. Wacker Dr., Suite 1515
>Chicago, IL 60606
>(312) 948-9090
>
>*Attorneys for Northwest Pallet Supply Co.*

By: /s/ Thomas G. Weber

17